IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**JPK NEWCO LLC.**<br><br>Debtor. | Case No.: 24-00262-ELG<br><br>Chapter 11 (Subchapter V) |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES TRUSTEE'S:**

**(1) OBJECTION TO EMPLOYMENT APPLICATION OF WOLFF & ORENSTEIN, LLC AS ATTORNEYS FOR DEBTOR,**

**(2) OBJECTION TO APPLICATION TO APPROVE EMPLOYMENT OF MAURICE B. VERSTANDIG, ESQ. AND THE VERSTANDIG LAW FIRM AS SPECIAL COUNSEL TO JPK NEWCO LLC, AND**

**(3) MOTION FOR RETURN OF ALL COMPENSATION RECEIVED FROM OR ON BEHALF OF DEBTOR**

Gerard R. Vetter, Acting United States Trustee for Region 4 (the "United States Trustee"), which includes the District of Columbia, pursuant to 11 U.S.C. §§ 327, 329, and 330, and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, respectfully files this memorandum in support of the following: (1) his Objection to Employment Application of Wolff & Orenstein, LLC as Attorneys for Debtor, (2) his Objection to Application to Approve Employment of Maruice B. VerStanding, Esq. and the VerStandig Law Firm as Special Counsel to JPK NewCo, LLC, and (3) his Motion for Return of all Compensation Received From or on Behalf of Debtor.

## INTRODUCTION

As will be described more fully in the United States Trustee's Motion to Dismiss, this case was not brought in good faith or for a proper bankruptcy purpose. Rather, this collusive involuntary case was commenced solely to hinder and delay a state court proceeding having no real relationship to this debtor and to forum shop that state court proceeding to a perceived friendlier forum for the defendant, an indirect owner of the shell company that owner and his counsel manipulated to be a debtor in this case.

Debtor's proposed counsel and proposed special counsel were involved in every step of this farcical proceeding from concocting the scheme, to finding someone willing to lend the debtor, a shell company, money for the sole purpose of creating a debt to commence an involuntary bankruptcy, and to use that money to pay themselves. Their involvement in this scheme, as well as their failure to fully disclose it, precludes them from employment in this case and requires the return of all fees received from or on behalf of the debtor.

## FACTS AND BACKGROUND

### The State Court Actions

1.   As a preliminary matter, the United States Trustee has not yet had an opportunity to take discovery in this case. Thus, the information contained in these allegations comes entirely from information obtained in the United States Trustee's initial debtor interview, informal discussions with proposed counsel and special counsel and others, and pleadings filed by third parties. For that reason, (a) the United States Trustee

will be seeking a scheduling order allowing him to take discovery in this matter prior to resolution of the applications, and (b) all of the following allegations are made on good faith information and belief, and subject to further discovery.

2. This bankruptcy case was commenced when Shaheen Sariri filed an involuntary Chapter 11 Petition against JPK NewCo, LLC ("NewCo"). NewCo consented to the petition and became a debtor on August 7 and 8, 2024, respectively. (*See* Docs. 6, 8.) The complicated background leading up to this case is described below:

3. In December 2021, Developer RE1, LLC ("RE1") borrowed approximately $4.1 million from WCP Fund 1, LLC ("WCP Fund"). (*See* Opp. to Remand, Adv. Pro. 24-10023-ELG, doc. 20 at ¶ 1.)

4. WCP Fund is a Delaware limited liability company operated by D.C. Capital, LLC, d/b/a Washington Capital Partners ("Washington Capital Partners"), a hard money lender located in McLean, Virginia. Washington Capital Partners' CEO is Daniel Huertas. Mr. Huertas is also the controlling member of WCP Fund.

5. RE1's loan was memorialized by promissory notes and was secured by deeds of trust on real property located in Washington D.C. *Id.* at ¶¶ 1, 2.

6. Subsequently, in March 2022, 423 Kennedy, LLC ("423 Kennedy") borrowed just under $10 million from WCP Fund. *Id.* at 3. (Collectively, both RE1 and 423 Kennedy are referred to as the "Borrowers.") This loan too was memorialized by promissory notes and secured by deeds of trust on real property located in Washington D.C. *Id.* at ¶¶ 3,4.

7. Various disputes relating to these two loans arose and, thus, on December 16,

2022, RE1 brought an action in the D.C. Superior Court against various defendants, including WCP Fund and Mr. Huertas.  (*See* Mot for Remand, Adv. Pro. 24-10023. doc. 13, at ¶¶ 5, 10.)  The actions alleged asserted state law claims arising out of the loan to RE1.  *Id.* at ¶¶ 2. 10.

8. Similarly, on July 13, 2023, 423 Kennedy, LLC ("423 Kennedy") filed an action in the D.C. Superior Court against the same defendants, alleging similar state law claims.  *Id.* at ¶¶ 2, 6, 10.

9. WCP Funds, Mr. Huertas and the other defendants in these two state court actions were represented by Maurice VerStandig, proposed special counsel to NewCo in this bankruptcy case.

10. By consent of all parties, both state court actions were consolidated for trial in June 2024.  *Id.* at ¶ 9.  Discovery in the cases was scheduled to close on July 9, 2024, and trial was set for September 2024.  *Id.* at 12.  In connection with that, the Borrowers noticed depositions of various people, including people associated with WCP Fund, for July 8, 2024.  *Id.* at ¶ 12.  Those deposition notices were served on July 3, 2024.  *Id.*

11. The day after the deposition notices were served, WCP Fund, Mr. Huertas and the other defendants in the state court action removed the state court case to this Court in the Adversary Proceeding of *Developer RE1, et al., v. WCP Fund I, LLC*, Adv. Pro. 24-10023-ELG.[1]

12. The Borrowers moved to remand the case to the state court arguing, *inter*

---

[1] Mr. Paret, as well as the Chapter 7 Trustee in his case, have asserted that Mr. Paret is involved in a partnership with either WCP Fund and/or Mr. Huertas, giving him some interest in these state court actions.  The United States Trustee takes no position with respect to that contention at this time.

- 4 -

*alia*, that the removal was untimely.[2]  (*See* Adv. Pro. 24-10023-ELG, doc. 13.)

### The Formation of JPK NewCo and the Scheme to Create Federal Jurisdiction

13. On February 1, 2024, well after the state court cases were commenced, NewCo was formed as a limited liability company under the laws of the District of Columbia.

14. Since its formation, NewCo has conducted no business. It has no employees, it generates no income, it produces no goods, and it provides no services. Its principal place of business is Washington Capital Partners' offices. Until April 15, 2024, NewCo existed simply as a shell entity.

15. On April 15, 2024, WCP Fund, while a defendant in the state court cases, assigned all its interests in the RE1 loan and the 423 Kennedy loan to NewCo. Although the assignment documents indicate that the assignments were "for value received," given that NewCo had no money and provided no services, it appears these assignments were actually for no consideration.

16. On June 3, 2024, when the discovery period on the state court cases was almost completed, Shaheen Sariri, a friend or other associate of Mr. Huertas, "loaned" NewCo $50,000, which NewCo, despite having no income or assets other than the loans subject to the state court litigation, was supposed to repay, in full with 10.55% annual interest, two months later on August 3, 2024. The first payment was due on July 1, 2024.

---

[2] On August 28, 2024, the Court held a hearing on the motion to remand and held that it did have jurisdiction over the removed actions but that all proceedings in it should be stayed pending resolution of an expected motion to dismiss this bankruptcy case.

17. Given NewCo's complete inability to repay this loan, it is obvious that this "loan" was a sham. Indeed, it was never intended that NewCo would repay this loan. Rather, the purpose of this arrangement was to cause NewCo to incur a debt to a single individual, Mr. Sariri, so Mr. Sariri could then initiate an involuntary bankruptcy against NewCo, thereby giving WCP Fund, Mr. Huertas and the other state court defendants another potential ground to remove the state court cases to this Court, which they perceive as a friendlier forum.

18. Once NewCo received the "loan" from Mr. Sariri, it dispersed those funds as follows. First, it gave $23,000 to Mr. VerStanding to hold until the involuntary bankruptcy was filed at which time it would be used to retain bankruptcy counsel for NewCo. At some time after NewCo transferred this money to Mr. VerStanding, but before this bankruptcy case was commenced, Mr. VerStanding contacted Jeffrey Orenstein to arrange for him to represent NewCo once the involuntary petition was filed.

19. Second, NewCo loaned the remaining $26,000 to an entity known as Energy Morroco, LLC, a loan that was not scheduled to be repaid (other than a $325 interest payment to be made each month) until December 21, 2024 (well after the "loan" from Mr. Sariri was due to be paid in full).

20. The purpose of the loan to Energy Morroco, LLC, was solely to give NewCo the appearance of carrying on business.

21. The scheme to artificially create removal jurisdiction through the sham loan from Mr. Sariri was created and consummated on the advice of WCP Fund's, Mr. Huertas's, and the other state court defendants' attorney, Mr. VerStandig.

- 6 -

22. Given that on July 1, 2024, when the first payment to Mr. Sariri came due, NewCo had (by design) no money whatsoever, it not surprisingly failed to make its first payment.

23. Then, according to plan, on July 23, 2024, Mr. Sariri filed an involuntary Chapter 11 petition against NewCo.

24. That same day, which was two days before NewCo was served with the involuntary petition (*see* Doc. 4), Mr. VerStandig contacted Mr. Orenstein to obtain his banking information in order to wire Mr. Orenstein the $23,000 Mr. VerStanding was holding for NewCo.[3] Given that the discussion on July 23, 2024 was about banking information, presumably the subject of retaining Mr. Orenstein to represent NewCo was discussed prior to July 23, 2024, and thus, prior to the filing of the involuntary petition.

25. The next day, on July 24, 2024, the Court issued the summons in this bankruptcy case. (*See* Doc. 3.)

26. That same day, on July 24, 2024, a day before NewCo was served with the involuntary petition, Mr. VerStandig wired the $23,000 to Mr. Orenstein to be used as a retainer for Mr. Orenstein's representation of NewCo.

27. On July 25, 2024, a day after Mr. Orenstein received the retainer to represent NewCo in this bankruptcy case, Mr. Sariri served, by regular mail, a copy of the summons and involuntary petition, on NewCo. (*See* Doc. 4.)

---

[3] Although service was legally accomplished on July 25, 2024, that service was by regular mail, so NewCo could not have actually received service on July 25, 2024. (*See* Doc. 4.)

28. On August 6, 2024, NewCo answered the involuntary petition and consented to be a debtor in this case. (*See* Doc. 6.)

29. Mr. Orenstein filed an application to be employed as NewCo's bankruptcy counsel. (*See* Doc. 5.) Mr. VerStandig filed an application to be employed as special counsel for NewCo, to represent it in the state court proceedings (to which, as of today, it is not a party). (*See* Doc. 12.)

## ARGUMENT

### A. The Court Should Disapprove Both Employment Applications.

#### 1. Employment of Messrs. Orenstein and VerStandig Do Not Benefit the Estate.

The Bankruptcy Code grants the debtor-in-possession the immediate power to select candidates for employment by the bankruptcy estate. *In re Harold & Williams Development Co.*, 977 F.2d 906, 910 (4th Cir. 1992); 11 U.S.C. §§ 327, 1107. However, it also gives the bankruptcy court "broad discretion" over the allowance and approval of such candidates. *Id.*

When ruling on an employment application under Section 327, the Court must decide "whether it is reasonably necessary during the administration of the estate" to employ the proposed professional person. 3 Collier on Bankruptcy ¶ 327.02[1] (16th ed.); *see also In re Computer Learning Ctrs., Inc.*, 272 B.R. 897, 903 (Bankr. E.D. Va. 2001). Employment cannot be "reasonably necessary" unless it would benefit the estate. It is not sufficient that the employment merely benefits the debtor; the employment must benefit

the estate.  *In re Kearney*, 609 B.R. 383, 386–88 (Bankr. D.N.M. 2019); *see also Lewis v. Fitzgerald*, 295 F.2d 877, 879 (10th Cir. 1961) (attorney fees incurred resisting an objection to the granting of a discharge benefited the debtor but not the estate and therefore cannot be paid from estate assets); *In re Jones,* 665 F.2d 60, 60 (5th Cir. 1982) (fees incurred defending the discharge not compensable from the estate); *In re Weingarden*, 84 B.R. 691, 692 (Bankr. S.D. Cal. 1988) (same).

"[O]nce the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327 … the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system."  *Harold & Williams*, 977 F.2d at 910.  "Among the ultimate considerations for the bankruptcy courts in making these decisions must be *the protection of the interests of the bankruptcy estate and its creditors*, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding."  *Id.* (emphasis added); *see also In re AroChem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999) (citing and quoting *Harold & Williams*); *Computer Learning Ctrs,* 272 B.R. at 903 (same); *In re Ballard*, No. 13-03948, 2013 WL 5924984, at *1 (Bankr. E.D.N.C. 2013) (same); *In re Biddle*, No. 12-05171, 2012 WL 6093926, at *3 (Bankr. D.S.C. 2012) (same); *In re Persaud*, 496 B.R. 667, 671 (E.D.N.Y. 2013) (same). In addition, and as will be described more fully in the United States Trustee's motion to dismiss, "[i]t is proper for the Court to inquire to what extent the Debtor is involved in the institution of an involuntary case and if it appears there was collusion between the Debtor and the petitioning creditors, and they fraudulently invoked the jurisdiction of the Court, the Court will not tolerate the maintenance of an involuntary petition." *In re Winn*, 49 B.R.

237, 239 (Bankr. M.D. Fla. 1985); *see also F.D.I.C. v. Cortez* (*In re Cortez*), 96 F.3d 50, 51 (2d Cir. 1996) (same); *In re Mi La Sul*, 380 B.R. 546, 555 (Bankr. C.D. Cal. 2007) (same).

Assuming discovery confirms the United States Trustee's allegations above, neither Mr. Orenstein's nor Mr. VerStandig's employment can benefit the estate or the creditors because is there is no actual estate and no actual creditors. NewCo was nothing more than a shell company that conducted no business and had no creditors. It now has only one manufactured creditor based on an artificial debt created collusively for the sole purpose of "fraudulently invok[ing] the jurisdiction of the Court." *Winn*, 49 B.R. at 239. Given Messrs. Orenstein's and VerStandig's involvement in this concoction, their employment does not "best serve[] the objectives of the bankruptcy system." *Harold & Williams*, 977 F.2d at 910. To the contrary, their collusion is a mockery of the bankruptcy system and an outright abuse of the bankruptcy system.

For those reasons the Court should exercise its "broad discretion," *id.,* and deny their employment.

2.  **Messrs. Orenstein's and VerStanding's Employment Should Be Denied Because They Failed to Accurately Disclose the Source of Their Compensation.**

Neither Mr. Orenstein nor Mr. VerStandig accurately disclosed the source of their compensation in this case. Section 329(a) of the Code requires that any attorney representing a debtor file a statement disclosing, *inter alia*, the source of his or her compensation. Rule 2016(b) elaborates upon Section 329(a)'s disclosure requirement. Pursuant to Rule 2016(b), debtor's counsel must make the disclosures required by Section

329(a) by filing a statement either within 14 days of the order for relief or, if for payments made after the order for relief, within 14 days of the date of the payment. Fed. R. Bankr. P. 2016(b).

Mr. VerStandig has failed to file any disclosure of compensation. Mr. Orenstein's disclosure fails to accurately disclose that the source of his compensation is actually the very loan used to create the "debt" resulting in the supposed jurisdiction of this Court in the first place.

In his employment application, Mr. Orenstein stated only that his firm "has been provided with a retainer in the amount of $23,0000 to be applied towards services to be rendered and expense incurred in connection with the Chapter 11 proceeding." (*See* Doc. 5 at ¶ 14.) Mr. Orenstein said nothing at all about the source of those funds.

Upon the request of the United States Trustee, Mr. Orenstein filed an amended declaration and a disclosure of compensation. Neither, however, fully disclose the source of his compensation as the very loan upon which the supposed jurisdiction of this Court is based. In his amended verified statement, Mr. Orenstein discloses:

> The amounts that funded the retainer were wired to W&O from the trust account of The VerStandig Law Firm, LLC. Prior to receiving the funds, I inquired and was advised that the funds were funds that The VerStandig Law Firm, LLC had received from the Debtor and had been holding in trust. Being satisfied that the funds were the Debtor's funds, I accepted the funds as W&O's retainer and undertook the engagement that is the subject of the Application.

(*See* Doc. 16-1 at ¶ 4.) And then:

> At the request of the Office of the United States Trustee, I have made further inquiry of The VerStandig Law Firm, LLC regarding the funds that were provided to W&O for its retainer and was advised that the

- 11 -

> Debtor had provided the funds to The VerStandig Law Firm, LLC to cover legal fees that the Debtor anticipated becoming due to The VerStandig Law Firm, LLC for legal services that it would incur in connection with litigation in which the Debtor anticipated that it would become a party. When the Involuntary Petition was filed against the Debtor prior to the time that the Debtor became a party to the litigation, the Debtor required counsel to provide representation in the bankruptcy case and W&O required a retainer to be engaged. I was advised that The VerStandig Law Firm, LLC was holding $23,000.00 in its trust account that could be made available to fund a retainer and I agreed to accept that amount.

(*See* Doc. 16-1 at ¶ 5.)

As described above, however, there is considerably more to this story. It is a massive over-simplification, and frankly a massive inaccuracy, to simply say this money came from NewCo. NewCo was nothing but a shell corporation. It had no money. It borrowed 100% of money used to pay Mr. Orenstein from the petitioning creditor, under terms it could not have complied with, for the sole purpose of creating a debt to allow the filing of a collusive involuntary petition. Mr. Orenstein conveniently omits that part. The source of Mr. Orenstein's funds is not NewCo, it is Mr. Sariri – the petitioning creditor. The fact that the money was funneled through NewCo to create the appearance of a legitimate debt does not alter that fact.

The fact that Mr. Orenstein failed to disclose this, and that his disclosure was this misleading, should preclude his employment in this case.

Mr. VerStanding has still not filed any disclosure of compensation in this case, even one that says he is working for free or that someone other than the debtor is paying him. That failure should preclude his employment in this case.

### 3. The Applications Should Be Disapproved Because Neither Mr. Orenstein Nor Mr. VerStanding Accurately Disclosed Their Connections in this Case.

Rule 2014(a) requires that every employment application be accompanied by a verified statement disclosing the proposed professional's "connections with the debtor, creditors or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a). Failure to fully and accurately disclose those connections is grounds for denial of employment. *In re Lillian Laurence, Ltd.*, 136 B.R. 1, 2 n.1 (Bankr. D.D.C. 1992).

Neither Mr. VerStandig nor Mr. Orenstein fully disclosed their connections to NewCo and to Mr. Sariri in this case. Again, at this stage the United States Trustee has not yet had an opportunity for full discovery. However, assuming the accuracy of his allegations, it appears Mr. VerStanding was instrumental, if not the mastermind, of the entire collusive transaction resulting in the involuntary petition. Thus, he has connections with the debtor, creditors and parties in interest that were not fully and accurately disclosed. (*See* Doc. 12-1.)

Similarly, Mr. Orenstein omits his involvement in this scheme from his employment application. Again, without discovery it is impossible for the United States Trustee to fully understand Mr. Orenstein's involvement. However, by July 23, 2024, the day the involuntary petition was filed (and prior to any summons being issued or the petition being served on NewCo), Mr. Orenstein and Mr. VerStanding were already exchanging banking information to allow for the payment of Mr. Orenstein's retainer from the funds from the

Sariri loan. Thus, it is clear that Mr. Orenstein was involved in this scheme and connected to NewCo, to its principals, to its agents and to its sole creditor, to a far greater extent than disclosed.

While neither Section 329 nor Rule 2016 provide an express penalty for failure to comply with the disclosure requirement, they impose upon attorneys an independent responsibility to make the requisite disclosures. *In re Gay*, 390 B.R. 562, 570 (Bankr. D. Md. 2008). Thus, failure to comply with the disclosure rules is a sanctionable violation. *Id.* This is so even if proper disclosure would have demonstrated that the attorney did not violate any other provision of the Bankruptcy Code or Rules.

**B.    Both Mr. Orenstein and Mr. VerStandig Should Be Required to Return All Funds Received From or on Behalf of NewCo.**

For the same reasons approval of their employment should be denied, Messrs. Orenstein and VerStandig should be required to return any compensation received from or on behalf of NewCo in connection with this case. None of this compensation benefits the estate. *See* 11 U.S.C. § 330. Indeed, there would be no estate but for the artificial incurrence of the very debt that is being used to pay Mr. Orenstein's fees. Moreover, their insufficient disclosures warrant return of such fees. *See* 11 U.S.C. § 329(b); *Gay,* 390 B.R. at 570.

**CONCLUSION**

For the reasons stated above, the Court should:

1. Enter a scheduling order allowing the United States Trustee to take discovery on the issues raised by the employment applications and the receipt of compensation by Messrs. Orenstein and VerStanding in this case;

2. Deny approval of both employment applications;

3. Require that both Messrs. Orenstein and VerStanding return all compensation they have received from or on behalf of NewCo; and

4. Award such other relief as this Court deems just and proper.

        Respectfully submitted,

        Gerard R. Vetter
        Acting United States Trustee for Region 4

Date: September 5, 2024        By: /s/ *Hugh M. Bernstein*
        Hugh M. Bernstein
        (Fed. Bar No.: MD23489)
        United States Department of Justice
        101 West Lombard Street, Suite 2625
        Baltimore, Maryland 21201
        (410) 962-4300
        hugh.m.bernstein@usdoj.gov

        Attorney for the United States Trustee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 5th day of September, 2024, a copy of the foregoing document was filed electronically in the United States Bankruptcy Court for the District of Columbia and that according to the Court's CM/ECF system, the following person received electronic service of this document as a result:

- **Kristen E Burgers**   kburgers@hirschlerlaw.com, ndysart@hirschlerlaw.com
- **Kristen S. Eustis**   Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov
- **Stephen A. Metz**   smetz@offitkurman.com, MD71@ecfcbis.com
- **Jeffrey M. Orenstein**   jorenstein@wolawgroup.com, kdriscoll@wolawgroup.com;mwolff@wolawgroup.com
- **James D. Sadowski**   jds@gdllaw.com, mer@gdllaw.com
- **U. S. Trustee for Region Four**   USTPRegion04.DC.ECF@USDOJ.GOV
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email,

and that no party in entitled to manual service.

/s/ *Hugh M. Bernstein*
Hugh M. Bernstein