IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**JPK NEWCO LLC.**<br><br>Debtor. | Case No.: 24-00262-ELG<br><br>Chapter 11 (Subchapter V) |

**SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THE UNITED STATES TRUSTEE'S:**

**(1) OBJECTION TO EMPLOYMENT APPLICATION OF WOLFF & ORENSTEIN, LLC AS ATTORNEYS FOR DEBTOR,**

**(2) OBJECTION TO APPLICATION TO APPROVE EMPLOYMENT OF MAURICE B. VERSTANDIG, ESQ. AND THE VERSTANDIG LAW FIRM AS SPECIAL COUNSEL TO JPK NEWCO LLC, AND**

**(3) MOTION FOR RETURN OF ALL COMPENSATION RECEIVED FROM OR ON BEHALF OF DEBTOR**

Gerard R. Vetter, Acting United States Trustee for Region 4 (the "United States Trustee"), which includes the District of Columbia, pursuant to 11 U.S.C. §§ 327, 329, and 330, and Rules 2014, 2016, and 9011 of the Federal Rules of Bankruptcy Procedure, respectfully files this supplemental memorandum in support of the following: (1) his Objection to Employment Application of Wolff & Orenstein, LLC as Attorneys for Debtor, (2) his Objection to Application to Approve Employment of Maruice B. VerStandig, Esq. and the VerStandig Law Firm as Special Counsel to JPK NewCo, LLC, and (3) his Motion for Return of all Compensation Received From or on Behalf of Debtor.

## INTRODUCTION

In his initial memorandum in opposition to the employment applications of Wolff & Orenstein, Maruice B. VerStandig and the VerStandig Law Firm, the United States Trustee addressed proposed counsel's lack of benefit to the estate, lack of disinterestedness, and the lack of full disclosures. In this supplemental memorandum, the United States Trustee will discuss how, assuming the facts alleged are shown by discovery to be true, proposed counsel have violated Rules 1.2(e) and 1.16 of the District of Columbia's Rules of Professional Conduct, and the duties imposed by Rule 9011 of the Federal Rules of Bankruptcy Procedure.

## ARGUMENT

As a starting point, collusive involuntary bankruptcies are often an "improper use of the bankruptcy laws." *In re Cadena*, 634 B.R. 1038, 1056 (Bankr. C.D. Cal. 2022). This is particularly so where the filing was not instituted to protect the petitioning creditor's rights as a creditor, but rather as a litigation tactic. *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 336-37 (3d Cir. 2015) ("Courts routinely find it improper for creditors to use the bankruptcy courts to gain a personal advantage in other pending actions or as a debt-collection device."); *In re CNG Foods, LLC*, No. 16-43278, 2020 WL 4219679 (Bankr. E.D.N.Y. July 13, 2020) (filing an involuntary bankruptcy for the purpose of stalling a hearing in state court litigation is an improper purpose); *In re St. Marie Dev. Corp. of Montana, Inc.*, 334 B.R. 663, 671-72 (Bankr. D. Mont. 2005) (finding bad faith where there was pending state court litigation between the parties); *In re WLB-RSK Venture*,

296 B.R. 509, 515 (Bankr. C.D. Cal. 2003) (involuntary petition dismissed that was filed as a litigation tactic), *aff'd*, 320 B.R. 221 (B.A.P. 9th Cir. 2004), *aff'd*, 223 F. App'x 555 (9th Cir. 2007).  Indeed, collusive involuntary filings filed for such improper purposes are considered a fraudulent means of obtaining bankruptcy court jurisdiction.  *In re Mi La Sul*, 380 B.R. 546, 554–55 (Bankr.C.D.Cal.2007) (quoting In re Winn, 49 B.R. 237, 239 (Bankr. M.D. Fla. 1985) ("[I]t is proper for the court to inquire to what extent the debtor is involved in the institution of an involuntary case and if it appears that there was collusion between the debtor and the petitioning creditors, and they fraudulently invoked the jurisdiction of the court, the court will not tolerate the maintenance of an involuntary petition."); *In re G-2 Realty Trust*, 6 B.R. 549, 552-53 (Bankr. D. Mass. 1980) ("a decision that the filing of an involuntary petition insulates the debtor from an examination into its good faith or lack thereof, would almost certainly encourage collusion between debtors seeking to fraudulently procure the jurisdiction of the bankruptcy court (or in some other manner abuse the purposes of the Code) and friendly creditors.")

     A.     **The District of Columbia's Rules of Professional Conduct.**

Rule 1.2(e) of the District of Columbia's Rules of Professional conduct provides that "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent…."  The comments to the rule continue, "a lawyer may not knowingly assist a client in criminal or fraudulent conduct." D.C. R. Prof'l Conduct 1.2, cmt 7.  "There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud

- 3 -

might be committed with impunity." *Id.*

Rule 1.16 provides, "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) The representation will result in violation of the Rules of Professional Conduct or other law." The comments to this rule provide, "A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that . . . violates the Rules of Professional Conduct or other law."

As alleged in his initial memorandum, based on good faith information and belief, and subject to further discovery, Shaheen Sariri "loaned" JPK NewCo, LLC ("NewCo") $50,000 despite NewCo having no business, assets, income or other ability to repay the loan under terms and conditions that NewCo clearly could not meet. Then, when NewCo missed the very first payment, as it of course would, Mr. Sariri commenced the involuntary petition against NewCo. Mr. VerStandig orchestrated this collusive filing.

The filing was not for any proper bankruptcy purpose. The bankruptcy provides no means for NewCo, an entity with no real assets or income, to repay Mr. Sariri. And, if Mr. Sariri had real concern about repayment, he would not have lent NewCo this money under these terms when it obviously had no way to repay it.

It appears clear that this entire scheme was orchestrated to fraudulently create bankruptcy court jurisdiction where none existed. Thus, Mr. VerStandig violated Rule 1.2(e) by assisting NewCo and his real clients, Mr. Huertas and WCP Fund 1, LLC, in perpetuating this fraudulent scheme. Mr. VerStandig then violated Rule 1.16 by not withdrawing.

Mr. Orenstein's actions similarly violated these rules. Mr. Orenstein had to know of the collusive nature of the filing. He was certainly aware that NewCo was just a shell that conducted no business and generated no income. He was retained and paid prior to service of the involuntary petition. Indeed, he was retained and paid on the very day the bankruptcy court issued the summons, which could not happen absent collusion and pre-awareness of the filing. His "consent" to the bankruptcy was a critical step in advancing the scheme.

### B.    Federal Rule of Bankruptcy Procedure 9011.

Pursuant to Rule 9011, by signing a paper that is filed with the bankruptcy court, an attorney is making an affirmative representation that the paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011. The rule also requires attorneys to undertake due diligence and to make "an inquiry reasonable under the circumstances" prior to signing and filing papers to be filed in the bankruptcy court.

In *Cadena*, *supra*, 634 B.R. 1038, the bankruptcy court discussed this obligation with respect to the filing of an involuntary petition. While the court was addressing the obligations of the attorney for the petitioning creditor, its observations equally are applicable here. In *Cadena*, an attorney representing the petitioning creditor filed an involuntary case against Ms. Cadena. *Id.* at 1043. Ms. Cadena, however, did not actually owe any debt to the petitioner. *Id.* at 1044. Rather, the alleged petitioning creditor apparently made up the claim to help a friend who had litigation pending with third parties

over property in which Ms. Cadena used to live. *Id.* at 1044-45. The attorney, however, did no investigation and simply took his client's word that he was owed a debt. *Id.*

As a defense, the attorney first argued that the case was an emergency filing so "he did not have time to accurately ascertain the facts." *Id.* at 1054. But, the court held, "[a]n emergency does not alleviate an attorney from doing some due diligence." *Id.* "Given the severe consequences for filing an improper involuntary bankruptcy petition, any attorney should have made more of an inquiry and even required that some proof be turned over before the petition could be filed." *Id.*

The court went on to explain that even if an emergency could justify the lack of any diligence, there were numerous "red flags" that should have led the attorney to realize more investigation was necessary. *Id.*

Here too there were numerous red flags that should have caused at least Mr. Orenstein to investigate further (obviously, if as alleged, Mr. VerStandig orchestrated the scheme, lack of investigation on his part is not the issue). Mr. Orenstein had to know his client was formed only months before the alleged "debt" was incurred. He had to know his client conducted no business, had no real assets and no source of income to pay any debts. He had to know that the alleged "debt" was incurred only a month before the first payment was missed and was due in full just days after he received his retainer. And, of course, he had to know of the pending litigation over the allegedly "bad debts" that constituted his client's only "asset."

Given these "red flags," Mr. Orenstein was certainly under a duty to investigate further before taking the case. And he was certainly under a duty to inquire more deeply

- 6 -

as to the origin of a $23,000 retainer being held by Mr. VerStandig when he had to know his client never had any way of paying that money to Mr. VerStandig other than the very loan that created Mr. Sariri's "debt."

When Messrs. Orenstein and VerStandig signed and filed papers in this case, each was acting in furtherance of the scheme to fraudulently create jurisdiction in this court. Thus, each such filing violated Rule 9011. These include, but are not limited to, Mr. Verstandig's employment application and the related verified statement and Mr. Orenstein's employment application and related verified statement.

## CONCLUSION

The above-described violations further support both the denial of the employment application and the denial of any fees.

Respectfully submitted,

Gerard R. Vetter
Acting United States Trustee for Region 4

Date: September 17th, 2024

By: /s/ *Hugh M. Bernstein*
Hugh M. Bernstein
(Fed. Bar No.: MD23489)
United States Department of Justice
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
(410) 962-4300
hugh.m.bernstein@usdoj.gov

Attorney for the United States Trustee

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 17th day of September, 2024, a copy of the foregoing document was filed electronically in the United States Bankruptcy Court for the District of Columbia and that according to the Court's CM/ECF system, the following person received electronic service of this document as a result:

- **Kristen E Burgers**  kburgers@hirschlerlaw.com, ndysart@hirschlerlaw.com
- **Kristen S. Eustis**  Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov
- **Stephen A. Metz**  smetz@offitkurman.com, MD71@ecfcbis.com
- **Jeffrey M. Orenstein**  jorenstein@wolawgroup.com, kdriscoll@wolawgroup.com;mwolff@wolawgroup.com
- **James D. Sadowski**  jds@gdllaw.com, mer@gdllaw.com
- **U. S. Trustee for Region Four**  USTPRegion04.DC.ECF@USDOJ.GOV
- **Maurice Belmont VerStandig**  mac@mbvesq.com, lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email,

and that no party in entitled to manual service.

/s/ *Hugh M. Bernstein*
Hugh M. Bernstein