Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Special Counsel to the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-262-ELG |
| | ) | (Chapter 11) |
| JPK NEWCO LLC | ) | |
| | ) | |
| Debtor. | ) | |

**REPLY IN SUPPORT OF APPLICATION
TO APPROVE EMPLOYMENT OF MAURICE B. VERSTANDIG,
ESQ. AND THE VERSTANDIG LAW FIRM AS SPECIAL COUNSEL
TO JPK NEWCO LLC AND OPPOSITION TO MOTION FOR RETURN OF
ALL COMPENSATION RECEIVED FROM OR ON BEHALF OF DEBTOR**

Come now JPK NewCo LLC (the "Debtor" or "Applicant") and Maurice B. VerStandig ("Proposed Special Counsel"), in response to the memorandum of the United States Trustee (DE #22-1) and the supplement thereto (DE #31) (collectively, the "UST Briefing"), and state as follows:

I. **Introduction**

The United States Trustee (the "UST") seeks a disgorgement of all fees paid to undersigned counsel by the Debtor and the disqualification of Proposed Special Counsel from serving in this matter on the basis that undersigned counsel has orchestrated a fraud. The former is a grave sanction; the latter is an even graver allegation. Unfortunately, both appear to be the byproduct of a premature and legally misinformed view of this case, with the most severe of contentions being

1

made without a meeting of creditors having even been conducted and without schedules having even been filed.

Most problematically, however, the allegations cast by the UST do not nearly support the legal remedies being sought by the UST. The core theory of the UST appears to be that JPK's bankruptcy filing is the byproduct of a so-called "Texas Two Step," in which an entity was created with cognizance that the company may shortly thereafter seek to reorganize in Chapter 11. The adjacent theory of the UST is that once this process was undertaken, a friendly creditor was asked to file an involuntary petition for purposes of commencing the bankruptcy process.

While these theories are largely accurate *sub judice*, there are two problems with the UST Briefing: (i) even assuming, *arguendo*, the veracity of every factual allegation, such would not equate to a basis to disgorge fees or deny the retention of special counsel; and (ii) by seeking such heavy-handed relief before schedules are even filed, or a meeting of creditors is even held, the UST is missing myriad pertinent facts—not the least of which being that JPK has creditors other than the petitioning creditor, that the other creditors of JPK assert *in rem* claims in the millions of dollars, and that the assets of JPK are also subject to collateral attack by a bankruptcy trustee in this Honorable Court.

There is one other fact of particular note, in the prism of a request for the disgorgement of fees: Proposed Special Counsel has never been paid any fees by JPK. Yes, a retainer was held by Proposed Special Counsel pre-petition, but that retainer was never drawn down and, to the contrary, was ultimately transferred—*en toto*—to JPK's proposed general reorganization counsel (who, incidentally, has also never drawn against the retainer to the best of Proposed Special Counsel's knowledge).

There is no precedent—one way or another—in this circuit for a so-called "Texas Two Step," let alone one with the presumptively-favorable modified details of (i) not involving a cash-heavy debtor; (ii) not involving wrongful death claims; and (iii) being centered on a conveyance of putatively-troubled assets that are already the subject of a dispute in this Honorable Court. How this Honorable Court will ultimately rule on this issue is very much a question for another day. But the fact that the question is one of first impression in this circuit, and that the facts of this case are such that the actions of JPK would almost assuredly satisfy the rigors of the test established in the most recent Texas Two Step case from a sister circuit, certainly shows there is at least a chance—if not an outright probability—of JPK succeeding in endeavoring to reorganize. And it is thusly particularly difficult to see JPK's entrance into bankruptcy as one subsumed by such rich bad faith as to warrant a disgorgement of fees or the disallowance of the retention of counsel.

A final introductory note: undersigned counsel is a member in good standing of the bar of this Honorable Court, is a regular practitioner in bankruptcy courts in multiple jurisdictions, and has been engaged in private practice for nearly 15 years. Accusing undersigned counsel of fraud—and violating the rules of professional conduct—in a public filing, forever imprinted on the public docket of this Honorable Court, is truly extraordinary. That the UST opted to do so before seeking dismissal, before seeing schedules, and before conducting a meeting of creditors, is genuinely disappointing. Perhaps it is naïve to posit more ought to be expected of the Department of Justice, but at minimum it is hoped that any member of the bar would be more deliberate before leveling such dark allegations against a fellow practitioner.

**II.    Argument: There are No Fees to be Disgorged**

The only portion of this brief actually mandated by the Local Rules is that opposing the UST's motion for disgorgement, with the balance of this filing being a discretionary reply to the

3

opposition to an application for employment. On the issue of disgorging fees, however, the question is moot: JPK has never paid any legal fees to Proposed Special Counsel.

For the avoidance of ambiguity, a retainer was paid pre-petition but never drawn upon. That retainer was then transferred to proposed general reorganization counsel. Proposed Special Counsel realized no portion of that retainer. And there are thusly no fees to be returned.

Proposed Special Counsel has, of course, been compensated by third parties for work in litigation that has since been removed to this Honorable Court, into which JPK may either be joined or seek to intervene. A third party also paid for work attendant to the formation of JPK. And the third party paying such fees is an insider of JPK. But the third party is not a debtor in this Honorable Court and no application is needed to represent the interests of that third party, so any fees paid are necessarily beyond the purview of the UST or this Honorable Court.

In an opinion touching on an admittedly different subject matter, a sister court has cautioned litigants, in the wake of sanctions requests being nonchalantly made:

> While the Court retains discretion to sanction Rule 11 violations all the same, the only sanction appropriate in this case is the following observation which is pertinent to attorneys of both sides. The conduct of this litigation, and particularly the dismissed claims, demonstrates a "shoot first, and ask questions later" mentality that is unbecoming of counsel and not conducive to the goals of Rule 11. Next time, make sure the law and facts support your allegations, before you litter your pleadings with them.

*NAS Sur. Grp. v. Cooper Ins. Ctr., Inc*. 617 F. Supp. 2d 581, 588 n.4 (W.D. Mich. 2007) (citing Fed. R. Civ. P. 11(c)(1)(B)).

The UST is seeking to disgorge fees that were never paid and accusing Proposed Special Counsel of fraud, ethical violations, and wrongdoing, all seemingly without reviewing schedules, conducting a meeting of creditors, or garnering an adjudication of the permissibility of a "Texas Two Step" bankruptcy in this circuit. Such would seem the epitome of the "shoot first, and ask questions later" approach so deftly cautioned against by the *NAS* Court.

4

### III.     Argument: Employment as Special Counsel is Appropriate

JPK's two largest assets are promissory notes, secured by liens on real estate, that are being attacked by the obligors thereupon. It thusly comes as a less-than-herculean leap to surmise JPK's interests—and, in turn, the interests of JPK's estate—are best protected by defending that litigation and staving off the *in rem* attacks against JPK's assets. It requires an equally-modest logical leap to surmise the lawyer best equipped to undertake such efforts is the one already engaged in defending the at-issue litigation on behalf of fellow—and former—noteholders and deed of trust beneficiaries. If ever there were a situation where synergy would militate in favor of engaging existing counsel in litigation as special counsel to a debtor, assuredly the matter *sub judice* would be that instance.

As the United States Bankruptcy Court for the Central District of California has observed, "[t]ypically, special counsel is appropriate when an attorney is employed to handle a specific legal action that is unrelated to the reorganization and the attorney is particularly suited for that action." *In re Goldstein*, 383 B.R. 496, 501 (Bankr. C.D. Cal. 2007) (citing *In re Warner*, 141 B.R. 762 (Bankr. M.D. Fla. 1992)).

Such is precisely what is sought here: Proposed Special Counsel is not being employed to draft a plan of reorganization, to represent JPK at a meeting of creditors, to file monthly operating reports, or to do anything else related to the classic arc of a Subchapter V reorganization. Proposed Special Counsel is, rather, being engaged to represent JPK's interests in an adversary proceeding where the entities that owe money to JPK are asserting lender liability claims and seeking *in rem* relief against the assets of JPK. This is the classic role of special counsel and, in the *sui generis* construct of this case, Proposed Special Case is uniquely qualified to carry out these tasks in an

5

efficient and synergistic fashion insofar as Proposed Special Counsel already represents JPK's equity interests (and the other defendants) in the subject litigation.

The UST makes much of case law holding that the employment of special counsel must protect the interests of a bankruptcy estate. DE #22-1 at p. 9. Yet the UST does not explain how employing Proposed Special Counsel would do anything other than protect these interests. Assuredly JPK and its creditors are best served by the Debtor's assets not being successfully attacked through lender liability litigation. And assuredly JPK and its creditors are best served by such litigation being managed in a coordinated and sensible manner by an experienced litigator who is also familiar with applicable bankruptcy law. Not addressing the litigation would be catastrophic; hiring new counsel—wholly unfamiliar with the litigation and not representing the interests of the related parties with common interests—would only invite the incursion of unnecessary legal fees and foment the potential for disharmonic chaos.

Again, though, it seems this argument—rife with flaws—is the byproduct of the UST's unfortunate decision to ignore the guidance of the *NAS* Court, shooting first and asking questions later. There *is* a bankruptcy estate here, and that estate *does* have creditors aside from the petitioning creditor. Indeed, it ought not be lost that the counterparties in the at-issue litigation are the two largest (albeit disputed) creditors of the estate. No doubt, this case *does* advance a proper bankruptcy purpose.

If the UST wishes to file a motion to dismiss arguing that a "Texas Two Step" is not permissible in the District of Columbia Circuit, even when a debtor is not flush with cash, even when there are no wrongful death claims, and even when the formation of the debtor is clearly attributable to an effort to isolate putatively troubled assets into a special purpose entity, such is very much the UST's prerogative. But those are not the questions instantly before this Honorable

6

Court. And it would seem foolhardy to presumptively assume the manner in which those questions will ultimately be answered, especially when the weight of authority from other courts is such that the bankruptcy of JPK is likely to be permitted to proceed.

### IV.    Argument: No Fraud Has Been Committed

The UST has accused undersigned counsel of violating multiple rules of professional conduct by counseling a client to engage in conduct that is either fraudulent or criminal. DE #31 at p. 4. The UST Briefing specifically alleges Proposed Special Counsel orchestrated a fraudulent scheme and then took steps to advance the fraudulent scheme. *Id.* This is an objectively errant assertion, being belied not just by the law governing involuntary bankruptcy filings but, too, the law governing ordinary petitions for bankruptcy relief.

Central to the UST's theory of fraud is the notion that JPK solicited a friendly creditor to file an involuntary bankruptcy petition so as to create bankruptcy jurisdiction. Yet in setting forth this theory, the UST misses two critical points: (i) JPK could have filed a petition for bankruptcy relief itself, 11 U.S.C. § 301; and (ii) working with friendly creditors to facilitate a bankruptcy filing is not an act of bad faith.

The former point merits some emphasis, insofar as it meaningfully distinguishes this case from many others: JPK has never before been a debtor in bankruptcy, was not subject to a so-called "bar order" against filing for bankruptcy relief, is not accused of lacking the internal accord requisite to execute a resolution authorizing the pursuit of reorganization, and was—at all times—eligible to be a debtor. 11 U.S.C. § 109. So the allegation of a coordinated involuntary petition being used to "create bankruptcy court jurisdiction," DE #31 at p. 4, is necessarily misplaced: JPK could have filed a Section 301 petition of its own accord.

7

This also matters insofar as the law governing "friendly" or "coordinated" involuntary cases is neatly divisible into two categories: (i) those instances where a debtor legally cannot seek bankruptcy relief on its own; and (ii) those instances where a debtor legally *can* seek bankruptcy relief on its own. There does not appear to be any precedent holding the latter variety of cases (which would most closely mirror the matter *sub judice*) to be bad faith filings. The former category of cases, perhaps surprisingly, presents an eclectic mix, with there not being any brightline rule of such circumstances equating to bad faith and, instead, with case-specific facts being the operative focus of inquiry.

Judge Brozman's ruling in the matter of *In re Kingston Square Assocs.*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997) demonstrates the marked permissibility of coordinated involuntary filings, even where a case falls into the aforementioned category of being one where a debtor cannot itself docket a petition for relief. There, a series of "bankruptcy remote provisions" in loan documents prohibited a group of debtors from seeking to reorganize under Chapter 11, *id.* at 714, so a law firm was paid to "solicit creditors to file involuntary . . . petitions," *id.*

When the *Kingston* filings were, inevitably, challenged as being the instrumentalities of collusive bad faith, Judge Brozman held:

> I conclude that although the debtors plainly orchestrated the filing of the involuntary petitions, they had reason to believe that reorganization was possible and did not circumvent any court-ordered or statutory restrictions on bankruptcy filings such that, absent any evidence of objective futility of the reorganization process, the cases ought not be dismissed now.

*Id*. at 714-715. Critical to this holding was a distinction drawn separating *Kingston* from cited collusive cases where a debtor had been judicially barred from seeking to reorganize:

> In each of these cases, a debtor attempted to bypass a statutory or court-imposed restriction on filing a new bankruptcy case by arranging the filings of involuntary cases with friendly creditors. Consonant with the definition of collusion, these cases contain (i) secret acts and (ii) a fraudulent purpose. The Movants ask me to extrapolate a rule from these cases that a debtor-induced filing per se leads to a

8

>finding of bad faith, which in turn constitutes cause for dismissing these chapter 11 cases. I decline to announce so broad a rule.

*Id.* at 733. *See also In re Mi La Sul*, 380 B.R. 546, 556 (Bankr. C.D. Cal. 2007) (". . . a case started in a collusive fashion can be saved if the court finds that reorganization is possible and the case passes the 'nose test.'").

To be sure, and as acknowledged by Judge Brozman in *Kingston*, there are plenty of cases where an otherwise-ineligible debtor sought to gin up an involuntary petition, so as to end-run a bar order, and those are frequently found to be bad faith filings. But even assuming every allegation of the UST instantly, such is very much not the case vis a vis JPK. Quite plainly, JPK could have filed a Chapter 11 petition on its own and, equally plainly, JPK is eligible to be a debtor in this Honorable Court. In fact, JPK did not even confront the obstacle of the debtors in *Kingston*, where loan provisions effectively stymied the docketing of a voluntary petition—the UST does not allege that JPK lacked the requisite support of members and/or directors to reorganize; the UST merely alleges that JPK sought to have a third party formally commence the reorganization process.

Key to *Kingston* and *Mi La Sul* is the notion that an allegedly collusive involuntary filing becomes permissible if reorganization is feasible. This necessarily brings the issues with the UST Briefing full circle: in the absence of schedules or a meeting of creditors, it is difficult to see how the UST could allege—and the UST most certainly does not appear to be alleging—that reorganization is not feasible on the part of JPK. To the contrary, by every indication, JPK is an entity with millions of dollars in assets, with at least three creditors, and where ongoing litigation presents a barrier to the effective monetization of those core assets.

All of which necessarily presents a rather simple reality: if JPK's involuntary filing was permissible, and if JPK is otherwise eligible to pursue Chapter 11 relief, then any "orchestration" of the same could not, by definition, have been fraudulent. And one would perhaps hope that the

UST might be cognizant of such before lodging such heavy-headed and incendiary allegations in the future.

V. **Conclusion**

WHEREFORE, the Debtor and Proposed Special Counsel respectfully pray this Honorable Court (i) approve the employment of Proposed Special Counsel; (ii) deny the UST's motion to disgorge fees; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: September 18, 2024    By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Special Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of September, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein including, *inter alia*, counsel for the United States Trustee.

/s/ Maurice B. VerStandig
Maurice B. VerStandig