**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>JPK NEWCO, LLC<br><br>Debtor. | Case No. 24-262-ELG<br><br>Chapter 11 |

### THE UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b)

Gerard R. Vetter, Acting United States Trustee for Region 4 (the "United States Trustee"), which includes the District of Columbia, by and through his undersigned counsel, in furtherance of the duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5) and pursuant to 11 U.S.C. § 1112, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for this District, hereby moves this Court for entry of an order dismissing this case for "cause" under 11 U.S.C. § 1112(b). As grounds therefore, the United States Trustee states and alleges as follows:

### INTRODUCTION

The instant bankruptcy case should be dismissed for cause because it was not filed in good faith, does not serve a valid bankruptcy purpose, and was filed to obtain a tactical advantage in litigation that had been pending in the District of Columbia Superior Court against JPK's owners. This case was fabricated by proposed special counsel to JPK NewCo, who has been bankruptcy counsel for JPK NewCo's owner, WCP Fund I LLC, in other proceedings for at least this Court's tenure on the bench. Everything about this case was manufactured in an attempt by WCP Fund I LLC, Daniel Huertas, and other Defendants in certain Superior Court litigation, to obtain

Kristen S. Eustis, Esq.
DC Bar No. MD28984
1725 Duke Street, Ste 650
Alexandria, VA 22314
(703) 557-7227
Kristen.S.Eustis@usdoj.gov
Counsel for Gerard R. Vetter
Acting United States Trustee for Region 4

jurisdiction before this Court, which is a perceived friendlier forum for those defendants and their counsel.

The Debtor was formed in early 2024. The debt incurred by the Debtor to the petitioning creditor, which is the Debtor's only debt, was loaned to the Debtor one month before the involuntary petition was filed, under terms that the Debtor could never comply with, and was used to pay its proposed bankruptcy counsel's retainer. JPK NewCo defaulted on the first payment due on the loan and it does not appear that the petitioning creditor engaged in any other enforcement remedies before filing the involuntary petition. This colluded effort to manufacture bankruptcy jurisdiction cannot and should not be sanctioned by this Court. Additionally, the Debtor has yet to file Statements and Schedules, its August monthly operating report, or provide proof of current insurance to the United States Trustee. For the reasons discussed herein, the bankruptcy case should be dismissed for cause.

## JURISDICTION AND VENUE

1. The Court has authority to hear and decide this matter. 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to 28 U.S.C. § 586(a)(3), the United States Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the United States Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295–96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest);

*Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

4. The United States Trustee is also a recognized party-in-interest with standing to request dismissal or conversion of a chapter 11 case. *See* 28 U.S.C. § 586(a)(8) ("in any case in which the United States trustee finds material grounds for relief under Section 1112 of title 11, the United States trustee shall apply promptly after making that finding to the court for relief")

5. Under 11 U.S.C. § 307, the United States Trustee has standing to be heard on the issues raised by this Motion.

## BACKGROUND

6. As a preliminary matter, the United States Trustee has not yet had an opportunity to take discovery in this case. Thus, the information contained in these allegations comes entirely from information obtained in the United States Trustee's initial debtor interview, informal discussions with proposed counsel and special counsel and others, and pleadings filed by third parties. For that reason, (a) the United States Trustee will be seeking a scheduling order allowing him to take discovery in this matter prior to resolution of the applications and this motion, and (b) all of the following allegations are made on good faith information and belief, and subject to further discovery.

***The Involuntary Petition and Commencement of the NewCo Bankruptcy Case***

7. On July 23, 2024, Shaheen Sariri ("Sariri") filed an involuntary Chapter 11 Petition against JPK NewCo, LLC ("NewCo" or the "Debtor") through counsel, Kristen Burgers.

8. The Involuntary Petition stated that Sariri was owed $51,443.52 under a Promissory Note. Doc. No. 1.

9. The Involuntary Summons was issued by the Clerk's Office on July 24, 2024 (Doc. No. 3) and a Certificate of Service of the Involuntary Petition and Summons was filed on July 25, 2024. Doc. No. 4.

10. The Certificate of Service states that Ms. Burgers served copies of the Summons and Involuntary Petition on NewCo by first-class mail, postage prepaid, on July 25, 2024. Doc. No. 4.

11. On August 6, 2024, NewCo consented to the Involuntary Petition and elected to proceed under subchapter V of Chapter 11 of the Bankruptcy Code. Doc. No. 6.

12. The Court entered its Order for Relief on August 7, 2024. Doc. No. 8.

**The Superior Court Action**

13. In December 2021, Developer RE1, LLC ("RE1") borrowed approximately $4.1 million from WCP Fund 1, LLC ("WCP Fund"). *See* Opp. to Remand, Adv. Pro. 24-10023-ELG, doc. 20 at ¶ 1.

14. WCP Fund is a Delaware limited liability company operated by D.P. Capital, LLC, d/b/a Washington Capital Partners ("Washington Capital Partners"), a hard money lender located in McLean, Virginia. Washington Capital Partners' CEO is Daniel Huertas. Mr. Huertas is also the controlling member of WCP Fund.

15. RE1's loan was memorialized by promissory notes and was secured by deeds of trust on real property located in Washington D.C. *Id.* at ¶¶ 1, 2.

16. Subsequently, in March 2022, 423 Kennedy, LLC ("423 Kennedy") borrowed just under $10 million from WCP Fund. *Id.* at 3. (Collectively, both RE1 and 423 Kennedy are referred to as the "Borrowers.") This loan too was memorialized by promissory notes and secured by deeds of trust on real property located in Washington D.C. *Id.* at ¶¶ 3,4.

4

17. Various disputes relating to these two loans arose and, thus, on December 16, 2022, RE1 brought an action in the D.C. Superior Court against various defendants, including WCP Fund and Mr. Huertas. *See* Mot for Remand, Adv. Pro. 24-10023. doc. 13, at ¶¶ 5, 10. The actions asserted state law claims arising out of the loan to RE1. *Id.* at ¶¶ 2. 10.

18. Similarly, on July 13, 2023, 423 Kennedy, LLC ("423 Kennedy") filed an action in the D.C. Superior Court against the same defendants, alleging similar state law claims. *Id.* at ¶¶ 2, 6, 10. Together, the Superior Court litigation by 423 Kennedy and RE1 will be collectively referred to herein as the "Superior Court Actions".

19. WCP Fund, Mr. Huertas and the other defendants in these two Superior Court Actions were represented by Maurice VerStandig, proposed special counsel to NewCo in this bankruptcy case.

20. By consent of all parties, both Superior Court Actions were consolidated for trial in June 2024. *Id.* at ¶ 9. Discovery in the cases was scheduled to close on July 9, 2024, and trial was set for September 2024. *Id.* at 12. In connection with that, the Borrowers noticed depositions of various people, including people associated with WCP Fund, for July 8, 2024. *Id.* at ¶ 12. Those deposition notices were served on July 3, 2024. *Id.*

21. The day after the deposition notices were served, WCP Fund, Mr. Huertas and the other defendants in the state court action removed the state court case to this Court in the Adversary Proceeding of *Developer RE1, et al., v. WCP Fund I, LLC*, (*In re Paret*), Adv. Pro. 24-10023-ELG.[1]

22. The Borrowers moved to remand the case to the state court arguing, *inter alia*, that

---

[1] Mr. Paret, as well as the Chapter 7 Trustee in his case, have asserted that Mr. Paret is involved in a partnership with either WCP Fund and/or Mr. Huertas, giving him some interest in these state court actions. The United States Trustee takes no position with respect to that contention at this time.

5

the removal was untimely. *See* Adv. Pro. 24-10023-ELG, doc. 13.

23. On August 20, 2024, WCP Fund, Mr. Huertas, the other defendants and NewCo, as debtor-in possession, all through counsel Mr. VerStandig, filed an opposition to the motion to remand the case. [2] *See* Adv. Pro. 24-10023-ELG, doc. 20. That opposition argued, among other things, that the "litigation will have a momentous impact upon the administration of two separate bankruptcy estates, while also being likely dispositive of JPK's ability to reorganize." *Id.* at p. 1.

***The Formation of JPK NewCo and the Scheme to Create Federal Jurisdiction***

24. On February 1, 2024, well after the Superior Court Actions were commenced, NewCo was formed as a limited liability company under the laws of the District of Columbia.

25. Since its formation, NewCo has conducted no business. It has no employees, it generates no income, it produces no goods, and it provides no services. Its principal place of business is Washington Capital Partners' offices in McLean, VA. Until April 15, 2024, NewCo existed simply as a shell entity.

26. On April 15, 2024, WCP Fund, while a defendant in the Superior Court Actions, assigned all its interests in the RE1 loan and the 423 Kennedy loan to NewCo. Although the assignment documents indicate that the assignments were "for value received," given that NewCo had no money and provided no services, it appears these assignments were actually for no consideration.

27. On June 3, 2024, when the discovery period in the Superior Court Actions was almost completed, Shaheen Sariri, a friend or other associate of Mr. Huertas, "loaned" NewCo $50,000, which NewCo, despite having no income or assets other than the loans subject to the

---

[2] On August 28, 2024, the Court held a hearing on the motion to remand and held that it did have jurisdiction over the removed actions but that all proceedings in it should be stayed pending resolution of an expected motion to dismiss this bankruptcy case, among other reasons.

Superior Court litigation, was supposed to repay, in full with 10.55% annual interest, two months later on August 3, 2024. The first payment was due on July 1, 2024. A true and correct copy of the Sariri Note is attached hereto as **Exhibit 1**.

28. Given NewCo's complete inability to repay this loan, it is obvious that this "loan" was a sham. Indeed, it was never intended that NewCo would repay this loan. Rather, the purpose of this arrangement was to cause NewCo to incur a debt to a single individual, Mr. Sariri, so Mr. Sariri could then initiate an involuntary bankruptcy against NewCo, thereby giving WCP Fund, Mr. Huertas and the other Superior Court defendants another potential ground to remove the Superior Court Actions to this Court, which they perceive as a friendlier forum.

29. Once NewCo received the "loan" from Mr. Sariri on June 21, 2024, it dispersed those funds as follows. First, on June 25, 2024, it gave $23,000 to Mr. VerStandig to hold until the involuntary bankruptcy was filed at which time it would be used to retain bankruptcy counsel for NewCo. At some time after NewCo transferred this money to Mr. VerStandig, but before this bankruptcy case was commenced, Mr. VerStandig contacted Jeffrey Orenstein to arrange for him to represent NewCo once the involuntary petition was filed. In fact, in the WO Opposition, as defined later herein, Mr. Orenstein acknowledges that he was contacted by Mr. VerStandig in early 2024 regarding the potential representation of one of Mr. VerStandig's clients in a Chapter 11.

30. Second, on June 25, 2024, NewCo loaned the remaining $26,000 to an entity known as Energy Morroco, LLC[3], a loan that was not scheduled to be repaid (other than a $325 interest payment to be made each month) until December 21, 2024 (well after the "loan" from Mr. Sariri was due to be paid in full). A true and correct copy of the Energy Morroco Loan Agreement is attached hereto as **Exhibit 2**.

---

[3] The Note signed by Energy Morroco LLC identifies it as a Delaware LLC. Per both Delaware and District of Columbia online public records, the entity is named Energy Morocco LLC. The Note is dated June 24, 2024.

7

31. The purpose of the loan to Energy Morroco, LLC, was solely to give NewCo the appearance of carrying on business.

32. The scheme to artificially create removal jurisdiction through the sham loan from Mr. Sariri was created and consummated on the advice of WCP Fund's, Mr. Huertas's, and the other Superior Court defendants' attorney, Mr. VerStandig.

33. Given that on July 1, 2024, when the first payment to Mr. Sariri came due, NewCo had (by design) no money whatsoever, it not surprisingly failed to make its first payment.

34. Then, according to plan, on July 23, 2024, Mr. Sariri filed an involuntary Chapter 11 petition against NewCo.

35. That same day, which was two days before NewCo was served with the involuntary petition (*see* Doc. 4), Mr. VerStandig contacted Mr. Orenstein to obtain his banking information in order to wire Mr. Orenstein the $23,000 Mr. VerStandig was holding for NewCo.[4]

36. The next day, on July 24, 2024, the Court issued the summons in this bankruptcy case. *See* Doc. 3.

37. That same day, on July 24, 2024, a day before NewCo was served with the involuntary petition, Mr. VerStandig wired the $23,000 to Mr. Orenstein to be used as a retainer for Mr. Orenstein's representation of NewCo.

38. On July 25, 2024, a day after Mr. Orenstein received the retainer to represent NewCo in this bankruptcy case, Mr. Sariri served, by regular mail, a copy of the summons and involuntary petition, on NewCo. *See* Doc. No. 4.

39. Mr. Orenstein's engagement agreement with NewCo is dated as of July 30, 2024. A true and correct copy of the engagement agreement is attached hereto as **Exhibit 3.**

---

[4] Although service was legally accomplished on July 25, 2024, that service was by regular mail, so NewCo could not have actually received service on July 25, 2024. *See* Doc. No. 4.

8

40. On August 6, 2024, NewCo answered the involuntary petition and consented to be a debtor in this case. *See* Doc. No. 6.

41. On August 6, 2024, Mr. Orenstein filed an application to be employed as NewCo's bankruptcy counsel. *See* Doc. No. 5. On that same date, Mr. VerStandig filed an application to be employed as special counsel for NewCo, to represent it in the state court proceedings (to which, as of today, it is not a party). *See* Doc. No. 12.

42. On August 20, 2024, the Borrowers filed an Objection to the Application to Employ Mr. Orenstein and his firm. Doc. No. 14.

43. On August 26, 2024, the Borrowers filed an Objection to the Application to Employ Special Counsel. Doc. No. 15.

44. On August 28, 2024, on request of the United States Trustee, Mr. Orenstein filed an amended Verified Statement in support of his employment (Doc. No. 16) and a Disclosure of Compensation (Doc. No. 17), which both failed to disclose the true source of the retainer.

45. On September 4, 2024, the United States Trustee filed his Objection to the Application to Employ Mr. Orenstein (Doc. No. 20), his Objection to the Application to Employ Mr. VerStandig as Special Counsel (Doc. No. 21), and his Motion to Disgorge Fees (Doc. No. 22).

46. On September 17, 2024, the United States Trustee filed his Supplemental Opposition to the Applications and the Motion to Disgorge (Doc. No. 31).

47. On September 18, 2024, Mr. VerStandig filed his Reply in Support of Application to Approve Employment of Maurice B. Verstandig, Esq. and The Verstandig Law Firm As Special Counsel To JPK NewCo LLC and Opposition To Motion For Return Of All Compensation Received From Or On Behalf Of Debtor (the "VLF Opposition") (Doc. No. 34).

48. On September 18, 2024, Mr. Orenstein and Wolff & Orenstein, LLC filed their

9

Opposition to Motion for Return of all Compensation Received from or on Behalf of the Debtor (the "WO Opposition", and together with the VLF Opposition, the "Oppositions") (Doc. No. 35).

49. To date, no Statements and Schedules have been filed.

50. Although a number of documents have been provided to the United States Trustee as requested, the Debtor has not provided proof of current insurance and has failed to timely file its first monthly operating report.

51. On September 18, 2024, Mr. Orenstein filed a Status Report (Doc. No. 33) indicating that he was not in a position to file any documents on behalf of the Debtor given the issues raised by the United States Trustee in the Motion to Disgorge and Objections to proposed counsel's employment.

## ARGUMENT

*Legal Standard*

The Court, for cause, after notice and hearing, may dismiss or convert a case to a case under chapter 7, whichever is in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) contains a non-exhaustive list of circumstances which constitute "cause" for dismissal or conversion. *See* 11 U.S.C. § 1112(b)(4). "Cause" includes failure to maintain appropriate insurance that poses a risk to the estate or to the public, and the unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter. *See* 11 U.S.C. § 1112(b)(4)(C) & (F). While there is no explicit requirement in the Bankruptcy Code or Rules that requires a petition be filed "in good faith", this requirement has been consistently imposed by courts in this jurisdiction and others. *See e.g. In re Franklin Mortg. & Inv. Co., Inc.*, 143 B.R. 295 (Bankr. D.D.C. 1992) ("I agree that the broad 'for cause' language in section 1112(b) supports the view that a debtor's lack of good faith may

10

constitute cause for dismissal of a chapter 11 petition. The bankruptcy courts are inherently empowered to dismiss cases in order to protect their jurisdictional integrity.") *In re Blue Chip Cap., DC, LLC*, 600 B.R. 735, 736–38 (Bankr. D.D.C. 2019) (finding that "[t]he evidence established cause for dismissing the case under 11 U.S.C. § 1112(b)(1)" which included lack of good faith).

The purpose of the "good faith" requirement is "to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). A bankruptcy case may be filed in bad faith when it is meant to circumvent pending litigation. *See In re BHA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988); *see also In re Dixie Broadcasting, Inc.* 871 F.2d 1023, 1027 (11th Cir. 1989), *cert denied, Dixie Broadcasting, Inc. v. Radio WBHP, Inc.*, 493 U.S. 853 (1989) (providing that bad faith can be found where bankruptcy petition filed to simple get out of a "bad deal"). Lack of good faith has also been found when the case involves a two-party dispute. *In re Crown Fin., Ltd.*, 183 B.R. 719, 722–23 (Bankr. M.D.N.C. 1995) ("Where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the filing for relief under Chapter 11 is intended to frustrate or delay the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for cause is warranted.").

This Court's inquiry into whether a petition was filed in good faith does not change if the petition under scrutiny is an involuntary one. *See e.g. In re Kingston Square Associates*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) citing *Federal Deposit Ins. Corp. v. Cortez,* 96 F.3d 50 (2d Cir. 1996); *In re Winn,* 49 B.R. 237, 239 (Bankr.M.D.Fla.1985) ("[I]t is proper for the Court to inquire to what extent the Debtor is involved in the institution of an involuntary case and if it appears there was collusion between the Debtor and the petitioning creditors, and they fraudulently invoked the

11

jurisdiction of the Court, the Court will not tolerate the maintenance of an involuntary petition."); *In re G–2 Realty Trust,* 6 B.R. 549, 552–53 (Bankr. D. Mass.1980) ("a decision that the filing of an involuntary petition insulates the debtor from an examination into its good faith or lack thereof, would almost certainly encourage collusion between debtors seeking to fraudulently procure the jurisdiction of the bankruptcy court (or in some other manner abuse the purposes of the Code) and friendly creditors.").

Many courts across the country have found that collusive involuntary bankruptcy filings are often an "improper use of the bankruptcy laws." *In re Cadena*, 634 B.R. 1038, 1056 (Bankr. C.D. Cal. 2022). This is particularly so where the filing was not instituted to protect the petitioning creditor's rights as a creditor, but rather as a litigation tactic. *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 336-37 (3d Cir. 2015) ("Courts routinely find it improper for creditors to use the bankruptcy courts to gain a personal advantage in other pending actions or as a debt-collection device."); *In re CNG Foods, LLC*, No. 16-43278, 2020 WL 4219679 (Bankr. E.D.N.Y. July 13, 2020) (filing an involuntary bankruptcy for the purpose of stalling a hearing in state court litigation is an improper purpose); *In re St. Marie Dev. Corp. of Montana, Inc.*, 334 B.R. 663, 671-72 (Bankr. D. Mont. 2005) (finding bad faith where there was pending state court litigation between the parties); *In re WLB-RSK Venture*, 296 B.R. 509, 515 (Bankr. C.D. Cal. 2003) (involuntary petition dismissed that was filed as a litigation tactic), *aff'd*, 320 B.R. 221 (B.A.P. 9th Cir. 2004), *aff'd*, 223 F. App'x 555 (9th Cir. 2007). *In re Mi La Sul*, 380 B.R. 546, 554–55 (Bankr.C.D.Cal.2007) (collusive involuntary filings filed for such improper purposes are considered a fraudulent means of obtaining bankruptcy court jurisdiction.).

This Court has recently applied a totality of the circumstances test in determining whether to dismiss a voluntary chapter 11 case for bad faith or lack of good faith. *See Olympia Investments,*

12

*Inc.* Case No. 24-00158-ELG September 10, 2024. Here, the totality of the circumstances weighs in favor of dismissal of the instant case for bad faith or lack of good faith—as NewCo was created, and created its single creditor, to cause this sham involuntary petition to be filed against it.

***The Involuntary Petition was a Sham and Should be Dismissed***

As is made clear in the Oppositions, most of the dispositive facts in support of this Motion do not appear to be in dispute—though proposed counsel and proposed special counsel gloss over certain key facts. Taken together, these facts support a finding by this Court of lack of good faith in filing of the involuntary petition.

From its inception, it is clear that NewCo was created with the understanding that there would eventually be a bankruptcy filing, whether voluntary or involuntary. Here, NewCo's only creditor made a "loan" to NewCo one month prior to the involuntary filing and caused the involuntary to be filed. This was inevitable as NewCo had no revenue and no business operations at the time the "loan" was made to it. In fact, the purported business operations of NewCo were manufactured, as part of the "loan" by the Petitioning Creditor was used to fund a loan by NewCo to Energy Morroco. This was clearly done in an effort by NewCo to give the appearance of having an ongoing business operation. NewCo then consented to the involuntary filing on August 6, 2024. This "friendly" involuntary filing is clearly a manufactured attempt to have additional grounds to remove the Superior Court litigation to a perceived friendlier forum. This is made clear by Mr. VerStandig's arguments on behalf of WCP Fund, Mr. Huertas, the other Superior Court Defendants and NewCo in Adversary Proceeding 24-10023, *Developer RE1 LLC et al* v. *WCP Fund I LLC et al*.

This type of collusive behavior should not be condoned by this Court. The United States Trustee has attempted, without success, to find authority that is factually on point with the instant

13

case. Somewhat unsurprisingly, undersigned counsel was not able to locate a case where 1) a friendly involuntary petition was filed against an alleged debtor that was created in anticipation of the involuntary; and 2) the debt incurred by the alleged debtor to the petitioning creditor was also manufactured by the alleged debtor in anticipation of the involuntary filing, to fund its bankruptcy counsel's retainer.

Again, this Court cannot and should not ignore that NewCo was formed in early 2024 and was a shell entity until April 15, 2024—only three months prior to the involuntary filing. At that time, certain of the Superior Court Defendants transferred the loans that were the subject of that litigation to NewCo for no consideration and with the understanding that NewCo would subsequently enter bankruptcy at some point. There can be no other conclusion than that this was orchestrated solely to frustrate the Plaintiffs in the Superior Court Action. Everything that followed was done under the guise of supporting a legitimate bankruptcy purpose, but the Court should not be fooled. There is no legitimate bankruptcy purpose here. There is no legitimate business operation to reorganize. To extend the protections and benefits of chapter 11 and especially the benefits of subchapter V to NewCo under these circumstances would be an abuse of the purposes of the Bankruptcy Code. *See In re G-2 Realty Trust,* 6 B.R. at 554-55 (dismissing a case where the alleged debtor changed from a nominee trust to a business trust as part of a scheme that would render it eligible to invoke or have bankruptcy jurisdiction invoked on its behalf and without any legitimate business purpose or any attempt to facilitate a reorganization and solely to frustrate the secured creditor's foreclosure proceedings).

***The Case Should Otherwise Be Dismissed***

"Cause" also exists under the enumerated provisions of Section 1112(b)(4) to dismiss the instant case due to NewCo's failure to file its Statements and Schedules, its failure to provide proof of insurance to the United States Trustee and its failure to file its initial monthly operating report. 11 U.S.C. § 1112(b)(4)(C) & (F).

As the United States Trustee has established a prima facie case that "cause" exists to convert or dismiss this case, the burden shifts to the Debtor to demonstrate that "unusual circumstances" exist that establish that converting or dismissing the case is not in the best interests of creditors and the estate to avoid the mandatory conversion or dismissal of their case. See 11 U.S.C. § 1112(b)(2). For the exception to apply, the court must find and specifically identify unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate. *Id*. The debtor or another party in interest must then: (1) establish that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; and (2) that the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—(i) for which there exists a reasonable justification for the act or omission; and (ii) that it will be cured within a reasonable period of time fixed by the court. *Id.; See In re Landmark Atl. Hess Farm*, LLC, 448 B.R. 707 (Bankr. D. Md. 2011). The United States Trustee is unaware of any unusual circumstances that would result in a finding that either conversion or dismissal of this case in not in the best interest of creditors and the estate.

The United States Trustee reserves its rights to raise any claims against Mr. Sariri as the petitioning creditor, under Section 303 as may be appropriate.

WHEREFORE, in consideration of the foregoing, the United States Trustee respectfully requests that the Court enter an Order 1) dismissing this case; and 2) for such other and further relief as the Court deems just and proper.

15

September 23, 2024  GERARD R. VETTER
ACTING U.S TRUSTEE, REGION 4

By: */s/ Kristen S. Eustis*
Kristen S. Eustis, Trial Attorney MD28984
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7227 - Direct Dial
Kristen.S.Eustis@usdoj.gov

Certificate of Service

I hereby certify that on this 23rd day of September, 2024, I electronically filed the foregoing Motion with the Clerk of the Court and, served it on the parties listed below who are registered Users of the CM/ECF system, by the Notice of Electronic filing generated by the Court's ECF system; and upon all the parties listed below, by first class mail, postage prepaid.

- **Hugh M Bernstein**    hugh.m.bernstein@usdoj.gov
- **Kristen E Burgers**    kburgers@hirschlerlaw.com, ndysart@hirschlerlaw.com
- **Kristen S. Eustis**    Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov
- **Stephen A. Metz**    smetz@offitkurman.com, MD71@ecfcbis.com
- **Jeffrey M. Orenstein**    jorenstein@wolawgroup.com, kdriscoll@wolawgroup.com;mwolff@wolawgroup.com
- **James D. Sadowski**    jds@gdllaw.com, mer@gdllaw.com
- **U. S. Trustee for Region Four**    USTPRegion04.DC.ECF@USDOJ.GOV
- **Maurice Belmont VerStandig**    mac@mbvesq.com, lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

By first-class mail, postage prepaid:

**JPK NewCo LLC**
8401 Greensboro Drive
Suite 960
McLean, VA 22102

*/s/ Kristen S. Eustis*
Kristen S. Eustis