GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (D.C. Bar # 446635)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com
*Counsel for Developer RE1, LLC and*
 *423 Kennedy St Holdings, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>    *Debtor*. | Case No.: 24-00262-ELG<br>Chapter 11 |

### STATEMENT IN SUPPORT OF THE U.S. TRUSTEE'S MOTION TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(B)

Developer RE1, LLC ("RE1" and 423 Kennedy St Holdings, LLC ("423 Kennedy") (together the "Borrowers"), two persons with an interest in this manufactured Chapter 11 case, by counsel, submit their statement in support of The United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) that was filed on November September 23, 2024 (ECF # 37) ("Motion").[1]

### INTRODUCTION

In Texas they have the "Two Step", but this case is more appropriately called "the DC Hustle". The Debtor here, JPK Newco, LLC, was created for the purpose of manufacturing a

---

[1] Although the initial notice in this case listed October 9, 2024 as the deadline for the filing of responses to the Motion, the US Trustee's office consented to Borrowers' request to file their statement in support by Monday, October 14, 2024. Borrower's counsel's further understanding is that the Debtor was granted a similar extension of time.

bankruptcy case so that multiple defendants that were the subject of two consolidated cases pending in D.C. Superior Court could try to forum shop their claims to this court in an adversary proceeding. The Debtor was created by the WCP Fund I, LLC ("the WCP Fund"), which owns a controlling (70.56%) interest. The remaining interest (29.44 %) of the Debtor is owed by SF NU, LLC ("SF NU"), another shell company that was apparently created so that it could begin foreclosure proceedings against Developer RE1, LLC in July of 2023. The wizard behind the curtain of the WCP Fund is an individual named Daniel Huertas. Mr. Huertas is also the owner and chief decision maker for a company called D.P. Capital, LLC, which services loans for the WCP Fund using the trade name Washington Capital Partners.

The WCP Fund, the WCP, Mr. Huertas, Mr. Drazin, Russell Drazin, the Trustee under all of the deeds of trust, and SF NU were all Defendants in litigation that started in D.C. Superior Court in December of 2022. The forum shopping of state law claims is neither equitable nor a permissible use of the bankruptcy court system.

## BACKGROUND

The Borrowers agree with the US Trustee's recitation of the facts as outlined in the Background portion of the Motion, and adopt those facts by reference. For further context, the Borrowers notes the following additional facts:

1.      423 Kennedy filed its first lawsuit on December 15, 2022 against The WCP, the WCP Fund, Mr. Huertas, and Mr. Drazin ("the Defendants"), the Trustee under two deeds of trust, in the case known as *423 Kennedy St Holdings, LLC. v. the WCP Fund, et al.,* Case No. 2022-CAB-005903 (D.C. Super. Ct.) ("423 Kennedy I"). 423 Kennedy I was dismissed, without prejudice, on February 7, 2023 at a hearing on 423 Kennedy's request for a temporary restraining

2

order because the presiding judge at that hearing determined that because a foreclosure notice had not been issued, there was no threat of imminent harm to 423 Kennedy.

2.      Developer RE1 filed its lawsuit against the Defendants on December 16, 2022 in the case known as *Developer RE1, LLC v. the WCP Fund I, LLC, et al.,* 2022-CAB-005935 (D.C. Super Ct.).  Filing the 423 Kennedy I case before the Developer RE1 case was the priority because the loan documents for 423 Kennedy had an earlier maturity date.

3.      Developer RE1 and 423 Kennedy participated in mediation in January 2024, but the mediation effectively ended when Mr. Huertas unilaterally decided (at the second session) that the negotiations were over.

4.      The July 13, 2023 lawsuit mentioned in the Motion (in ¶ 18) was the refiling of nearly identical claims by 423 Kennedy after a foreclosure notice was issued to 423 Kennedy by the WCP Fund on June 23, 2024 in the case known as *423 Kennedy St Holdings, LLC. v. The WCP Fund, et al.,* Case No. 2023-CAB-004260 (D.C. Super. Ct.) ("423 Kennedy II").

5.      On April 21, 2024, SF NU filed a motion to dismiss in the Developer RE1 case. The main reason that SF NU was named as a defendant in a Second Amended Complaint was because SF NU (not the WCP Fund) issued the foreclosure notice.  In the motion to dismiss, SF NU claimed that the Debtor was an indispensable party because "[the Debtor] owns the note, and holds the rights arising under the correlative deed of trust."  Developer RE1 filed an opposition to the motion to dismiss, which motion was still undecided by the date the cases were removed to this court.

6.      The Borrowers believe that the Debtor was also created for the improper purpose of stalling the Developer RE1 case temporarily until the plot to put the Debtor into involuntary bankruptcy could be fully effectuated.

3

7. In 423 Kennedy II, 423 Kennedy served its first set of interrogatories and a first set of requests for the production of documents on all of the Defendants, including SF NU. In interrogatory answers (dated June 7, 2024), the Defendants disclosed that the Debtor "is knowledgeable about its acquisition of the promissory note *and deed of trust*, from WCP." (italic emphasis added). This was the first time that 423 Kennedy learned that the Debtor was somehow involved with 423 Kennedy's loan documents.

8. None of the Defendants produced any documents in response to 423 Kennedy's document requests. For example, the Defendants did not produce any documents showing how the Debtor acquired "the promissory note and deed of trust from the WCP", nor did they produce any documents showing any related communications concerning those transactions, nor did they produce a privilege log.

9. The Defendants did not serve any discovery requests on 423 Kennedy, nor did they note any depositions, this despite the fact that a trial was scheduled for September 9, 2024.

10. None of the Defendants asserted a counterclaim against 423 Kennedy for the amounts allegedly due under the loan documents.

11. The Debtor took no action in 423 Kennedy II to assert that it had some interest in either the claims or the outcome of that case.

12. The Defendants were losing the litigation battle in D.C. Superior Court, where two different judges concluded that the Borrowers were likely to prevail on the merits as to all of the Borrower's claims.

13. Mr. Verstandig did not serve any discovery requests on 423 Kennedy, nor did he file a counterclaim against 423 Kennedy on behalf of any Defendant.

4

14. Mr. Verstandig also failed to assert a compulsory counterclaim against Developer RE1 in the Developer RE1 case until after the deadline to do so had expired. Developer RE1 moved to dismiss that Counterclaim as untimely, and that motion was also pending when the cases were removed to this court.

15. In hindsight, it is now clear that one reason Mr. Verstandig probably did not seek discovery from 423 Kennedy or assert a compulsory counterclaim against 423 Kennedy was because he knew that the plan, which he appears to have orchestrated, was already in place to try to forum shop the state law claims to this court by filing a notice of removal and/or putting the Debtor into bankruptcy.

16. There are other likely reasons, besides forum shopping, that the plan to put the Debtor into bankruptcy was created. By creating the Debtor, then transferring certain loan documents to the Debtor, then removing the cases to bankruptcy court, the Defendants could then use the Debtor to both take discovery from 423 Kennedy and to assert a counterclaim (for amounts allegedly due under the loan documents) that the Debtor's predecessor likely lost forever as a result of the failure to timely assert that counterclaim while the cases were pending in D.C. Superior Court.

## THE LEGAL STANDARDS

Courts are duty bound to conduct an inquiry, if requested, to determine whether an involuntary petition has been filed in good faith. *See In re United States Optical, Inc.*, 1999 U.S. App. LEXIS 6960 at *15-16 (4th Cir. 1993). However, the law presumes that a petition is filed in good faith, and the party contending that a creditor acted in bad faith must establish such bad faith by a preponderance of the evidence. *See id.* One test for deciding whether to dismiss or convert a Chapter 11 case is a finding of objective futility and subjective bad faith. *Carolin*

*Corp. v. Miller*, 886 F.2d 693, 695 (4th Cir. 1989). There is no definition of "good faith" in the Bankruptcy Code; the finding is fact-specific. *In re Sawyer*, No. 07-10252 SSM, 2007 WL 1275627, at *5 (Bankr. E.D. Va. June 13, 2007), opinion corrected, No. 07-10252 SSM, 2007 WL 2110314 (Bankr. E.D. Va. July 17, 2007).

The determination of bad faith is "a fact intensive determination better left to the discretion of a bankruptcy court." *See, e.g.*, *in re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996) (applying a "totality of the circumstances" standard for determining bad faith under 11 U.S.C § 303). To make a finding of bad faith, no single factor is considered determinative -- any conceivable list of factors is not exhaustive and there is no single factor that will necessarily lead to a finding of bad faith. *See, e.g., Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir. 1989). *In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 (Bankr. D.S.C. 1995) (Analysis under Chapter 11) ("In making a determination regarding allegations of bad faith, the Court must examine the totality of the facts of the case.").

When using a "totality of the circumstances" test, courts have considered many factors. *See, e.g.*, *in re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997). *In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015) the third circuit has applied a totality of the circumstances test to the involuntary petition context. The factors the *Forever Green* court listed were: (1) whether the creditors satisfied the statutory criteria for filing the petition; (2) whether the petition was meritorious; (3) whether the creditors made reasonable inquiry into the relevant facts and pertinent law before filing; (4) whether there was evidence of preferential payments to certain creditors; (5) whether the filing was motivated by ill will or a desire to harass; (6) whether the filing was used to obtain a disproportionate advantage; (7) whether the filing was used as a substitute for customary debt-collection procedures. *Forever Green*, 804 F.3d at 336.

6

When evaluating whether there is "bad faith" in the Chapter 11 context, other factors courts have considered are: (1) the debtor's concealment or misrepresentation of assets; (2) the debtor's lack of candor and completeness in his statements and schedules; (3) whether the debtor has sufficient resources to repay his debts; (4) whether the debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence; (5) whether the debtor's petition is part of a deliberate and persistent pattern of evading a single creditor; (6) whether the debtor is overutilizing the protection of the Code to the detriment of his creditors; (7) whether the debtor reduced his creditors to a single creditor prior to filing the petition; (8) the debtor's lack of attempt to repay creditors; (9) the debtor's payment of debts to insider creditors; (10) the debtor's procedural gymnastics that have the effect of frustrating creditors; and (11) the unfairness of the debtor's use of the bankruptcy process. *See McDow v. Smith*, 295 B.R.69, 79-81 n. 22 (Bankr. E.D. Va. 2003); *see also In re Silberkraus*, 253 B.R. 890, 905 (C.D. Cal. Bankr. Ct. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, *forum shop,* or obtain a tactical advantage regarding litigation ongoing in a nonbankruptcy forum – whether that nonbankruptcy forum is a state court or a federal district court.") (italic emphasis added).

The D.C. Court of Appeals has similarly found that an involuntary petition was filed in bad faith when it as filed "for the sole purpose of thwarting [Borrower's] rights to have its claims litigated in the D.C. Superior Court." *See, e.g., Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop.*, 441 A.2d 956, 962 (D.C. 1982); *see also Corto v. National Scenery Studios*, 705 A.2d 615, 620 (D.C. 1997) ("The filing of successive bankruptcy petitions with the clear intent of forestalling the legal proceeding constitutes bad faith.").

7

## LEGAL ARGUMENT

The US Trustee has cited multiple cases where bankruptcy courts have dismissed collusive involuntary bankruptcy filings.  Here, applying a totality of the circumstances test, the involuntary petition was plainly filed in bad faith.  First, the timing of the filing of a notice of removal, right before the Borrowers were going to take depositions of the two entities that controlled the Debtor, and the filing of the involuntary petition here on the morning that an important hearing was held before this court (on July 23, 2024 in Adv. Pro. 24-10023-ELG), strongly suggest that the involuntary petition was filed to create a "core proceeding" to bolster the Defendants' removal of the pending Superior Court cases.  *See In re Meltzer*, 516 B.R. 504, 516 (Bankr. N.D. Ill. 2014) (noting that the timing of a bankruptcy filing before a court hearing is an important factor).

The Debtor here was created by, and is either owned or controlled by, the WCP Fund and SF NU – two of the Defendants in the Superior Court litigations.  The Court can, and should, consider the collusive nature of the filing here by related persons who are clearly forum shopping.  *See Corto v. Nat'l Scenery Studios*, 705 A.2d 615, 620 (D.C. 1997) (finding that a debtor was not entitled to an automatic bankruptcy stay where involuntary bankruptcy petitions filed by the debtor's family members were "collusive and filed in bad faith.").  As the US Trustee has also noted, the involuntary petition was filed for the sole purpose of impermissible forum shopping – a fact that the petitioning creditor has now admitted.  *See* ECF No. 48 (Opposition filed by Shaheen Sariri) ("Mr. Sariri elected to file an involuntary bankruptcy *rather than pursue his remedies in the Superior Court of the District of Columbia* because he was concerned about the length of time it would take for him to obtain a money judgment in Superior

8

Court and whether the Debtor's assets would be dissipated by that time.") (italic emphasis added).

As also noted by the US Trustee, the Debtor has no employees and has conducted no legitimate business. The Debtor has to date not made any demand for payment from Developer RE1 or 423 Kennedy. The promissory note given to Mr. Sariri was set up to fail by design. Mr. Sariri knew or should have known that the note that he received could not be repaid because the Debtor existed on paper and had no legitimate business – or revenue. And although the Debtor has nominally listed both Developer RE1 and 423 Kennedy as creditors in its schedules, neither Developer RE1 nor 423 Kennedy have asserted any claims against the Debtor. The creation of a creditor/debtor relationship between the Debtor and 423 Kennedy and Developer RE1, if any such relationship actually exists, was manufactured by the Defendants more than a year after the Superior Court cases were first filed in December of 2022. More importantly, the conduct that gave rise to the Borrowers' state law claims occurred more than sixteen months before the Debtor even existed on paper. The US Trustee has made prima facie showing of bad faith -- and further discovery will likely prove -- that the Debtor is not a legitimate company, it has no legitimate debts, and it has no business to reorganize. The creation of the Debtor had but one purpose: to move claims out of a court forum that the Defendants did not like.

There are other sound reasons to dismiss this case. "Bankruptcy courts are courts of equity that apply equitable principles in the administration of bankruptcy proceedings." *See, e.g.*, *In re Kaiser Aluminum Corp*, 456 F.3d 328, 339 (3d Cir. 2006). If this court allows "the DC Hustle" to take place in this case, the forum shopping floodgates will be wide open. Any litigant that is unhappy with how a DC Superior Court litigation is going could, at any time, create a new company, transfer claims (or assets) to that company, set up a friendly, straw-man

9

creditor with a phony loan to allow the friendly creditor to put the new company into involuntary bankruptcy, then file a notice of removal to forum shop the state law claims to bankruptcy court. The Court should not allow bankruptcy court jurisdiction to be manufactured, or dependent upon, the manipulation of the process by disgruntled state court litigants.

## CONCLUSION

For the foregoing reasons, and any reasons that may be advanced the hearing on the Motion to Dismiss, the Borrowers request: (a) that they be permitted to participate in discovery with the US Trustee to learn about the full extent of the persons involved with the filing of this manufactured involuntary petition and the related forum shopping scheme; (b) that this case be dismissed as having been filed in bad faith; and (c) that after discovery is completed, the court set a briefing schedule to allow the Borrowers time to file a motion for sanctions -- under 11 U.S.C. 303(i)(2) or the court's inherent sanctions authority -- against the petitioning creditor and against any other persons that participated in this impermissible abuse of the bankruptcy court system.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: October 14, 2024

/s/ James D. Sadowski
James D. Sadowski, Esq. #446635
Alexandria J. Smith, Esq. #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of October, 2024, a true copy of the foregoing Statement in Support of Motion to Dismiss was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D Sadowski
James D. Sadowski