APPENDIX A
(Debtor's History)

1.    <u>General Background</u>

A.    <u>Debtor's Business and Commercial Activities</u>.

i.    <u>Formation of the Debtor</u>

The Debtor was formed on February 1, 2024, when its Articles of Organization were filed with the Corporations Division of the District of Columbia.  At the time of its formation, WCP Fund I LLC ("WCP") and SF NU, LLC ("SFNU") were the Debtor's sole owners and remain its sole owners today.  As addressed in more detail below, the Debtor was created on the advice of counsel, with then-present cognizance the Debtor might be used to either facilitate an amicable resolution to the pending litigation involving WCP and SFNU, and/or as a mechanism of siloing troubled assets so as to remove those assets, and their accompanying putative liabilities, from the balance sheets of WCP and SFNU.

JPK was capitalized by WCP and SFNU through contribution of two junior promissory notes held by WCP and SFNU respectively, and assignment of the correlative deeds of trust, with membership interests in the Debtor being given to WCP and SFNU as consideration for the contribution of the promissory notes.  The formation and capitalization of the Debtor is reflected in its Operating Agreement.

ii.    <u>The Contributed Notes</u>

In December 2021, WCP loaned $4,103,000.00 to Developer RE1 LLC ("DRL"), with the subject loan being memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes").  The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property").  Similarly, in March 2022, WCP loaned $9,945,693.00 to 423 Kennedy St Holdings LLC ("423 Kennedy"), with the subject loan being memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes").  The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property").  Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, inter alia, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four - let alone all four - notes at maturity.  As a result, both DRL and 423 Kennedy were advised that foreclosure would be pursued.

iii.    <u>Litigation & Mediation</u>

DRL and 423 Kennedy asserted that they did not believe that their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled.  As a result, they each brought suit in the District of Columbia Superior Court (the "Superior Court")

to enjoin those foreclosures, alleging the declared defaults to have amounted to tortuous interference with their business relations.  The two cases were captioned Developer RE1, LLC v. DP Capital, LLC, et al. (the "DRL Litigation") and 423 Kennedy St Holdings, LLC v. DP Capital, LLC, et al. (the "423 Kennedy Litigation") and were consolidated in the Superior Court as Case No. 2022-CAB-005935 (the "Note Litigation").  The respective complaints are colorful in nature, with one expressly alleging that "Money is the Root of All Evil," and one accusing WCP of corruption.  In the course of the Note Litigation, the Superior Court entered injunctions prohibiting the defendants from foreclosing on the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust.  Following the entry of these injunctions, the parties to the Note Litigation agreed to mediate before a retired Superior Court judge.  During the course of two formal mediation sessions, certain potential resolutions were discussed whereby 423 Kennedy and/or DRL would release claims in exchange for participating in a share of loan profits.  As part of the aforesaid negotiations, WCP introduced the idea of transferring certain promissory notes into a so-called "special purpose entity," so ownership interests in the negotiable instruments could be ultimately divided pursuant to a settlement agreement without (i) having to sever the notes themselves into multiple pieces; and/or (ii) needing to offer DRL and/or 423 Kennedy an ownership interest in WCP or any of its co-defendants.  Shortly after the conclusion of the second mediation session , and consistent with those discussions, the Debtor was formed as that "special purpose entity."

iv.    The Debtor's Business Operations

Following its formation, the Debtor needed funds to engage counsel and to operate, with the expectation the Debtor would be joined in the Note Litigation.  To procure such funds, the Debtor borrowed $50,000.00 from Shaheen Sariri ("Mr. Sariri").  At the time the loan was made, Mr. Sariri was advised that the Debtor may use part or all of the loan proceeds to engage counsel, including the potential engagement of insolvency counsel.  A portion of the loan proceeds were transferred to the IOLTA account of The VerStandig Law Firm, LLC (VLF"), WCP's litigation counsel, to be held pending VLF's anticipated engagement to represent the Debtor in the litigation.  The Debtor loaned the remaining proceeds to Energy Morocco LLC ("EM"), an unrelated third party, in an effort to make a profit from interest on the loan.

B.    Allegations of Wendell Webster and Charles Paret

Charles Paxton Paret ("Mr. Paret") is a Chapter 7 debtor in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") in the case captioned In re Paret, Case No. 23-217-ELG (the "Paret Main Case").  In connection with the administration of Mr. Paret's bankruptcy estate, Wendell Webster ("Mr. Webster"), the Chapter 7 trustee in the Paret Main Case, filed an adversary complaint against DP Capital, LLC ("DPCL"), WCP, and WCP's principal, Daniel Huertas ("Mr. Huertas") (the Webster Complaint") which initiated the adversary proceeding captioned Webster v. Huertas, et al., Adversary Proceeding No. 23-10025-ELG (the "Webster Litigation").  The Webster Complaint, filed more than five months after JPK was created, appears to allege that the loans made by WCP, to DRL and 423 Kennedy, were "involved" in a partnership between Messrs. Huertas and Paret.  The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret and asks the Bankruptcy Court to impose

a constructive trust on the assets of the putative partnership.  It is not clear whether the assets referred to in the Webster Complaint and alleged to part of the putative partnership are the DRL Notes and 423 Kennedy Notes or whether they are the DRL Property and the 423 Kennedy Property.  Presently, the Debtor is not a party to the Webster Litigation.

C.    Removal of Note Litigation

On July 4, 2024, two days after the filing of the Webster Complaint, WCP and its co-defendants caused the Note Litigation to be removed to the Bankruptcy Court with the removed Note Litigation being assigned Adversary Proceeding No. 24-10023-ELG.  At the time the Note Litigation was removed, SFNU had recently been joined as a party.  Upon being joined, SFNU filed a motion to dismiss, which was still pending at the time of removal (and which remains pending as of present).  SFNU's motion to dismiss urges that JPK is a necessary party to the Note Litigation.  The plaintiffs in the Note Litigation have sought to have the Note Litigation remanded to the Superior Court.  The Bankruptcy Court has heard argument on that motion and has taken the matter under advisement.

D.    The Motion to Dismiss

On September 23, 2024, the Office of the United States Trustee (the "UST") filed its Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) (the "Dismissal Motion") seeking to dismiss the Debtor's pending bankruptcy case.  On October 14, 2024, WCP filed an opposition to the Dismissal Motion.  The Debtor joined WCP's opposition that same day.  The Dismissal Motion is pending before the Bankruptcy Court with the anticipation that discovery will be conducted before a hearing on the Dismissal Motion is held.

E.    The Debtor's Prospects for Reorganization

The Debtor has no tax obligations, no priority debt, and no secured debt.  Pre-Petition, the Debtor's only liabilities were the liability to Mr. Sariri, and unliquidated in rem claims asserted by the plaintiffs in the Note Litigation.  The loan the Debtor made to EM comes due in December of 2024 and the Debtor anticipates being able to collect those amounts from EM.  The Debtor will be able to use the funds received from EM to satisfy, in whole or in part, the administrative claims in this bankruptcy case and to use any balance to fund its payment to unsecured creditors.  The Debtor's ability to repay the balance of the amounts due to creditors is a factor of its ability to collect the amounts due on the Notes and, for that reason, is wholly dependent on the results of the Note Litigation.  The degree of success in the Note Litigation will determine what portion, up to 100%, the Debtor will be able to pay to its unsecured creditors. The Debtor it is confident that it will be able to maintain operations during the course of the Note Litigation and that it will complete its reorganization as proposed in this Plan.