UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

IN RE:                                      *

JPK NewCo, LLC                              *      Case No. 24-00262-ELG
                                                   (Chapter 11)

             Debtor                         *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

FIRST APPLICATION OF WOLFF & ORENSTEIN, LLC FOR
ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED FROM JULY 30, 2024, THROUGH FEBRUARY 7, 2025

Pursuant to 11 U.S.C. § 331 and Local Bankruptcy Rule 2016-1, Wolff & Orenstein,

LLC. ("Applicant"), bankruptcy counsel to the Debtor, JPK NewCo, LLC (the "Debtor") files its

First Application ("Fee Application" or "Application") for Allowance of Interim Compensation

for Professional Services Rendered from July 30, 2024, through February 7, 2025 (the "First

Interim Period"), and respectfully represents as follows:

Background

1.       On July 23, 2024 (the "Petition Date"), Shaheen Sariri filed an Involuntary

Petition (the "Petition") against the Debtor for relief under Chapter 11 of the Bankruptcy Code.

2.       On August 6, 2024, Debtor filed an Application to retain Applicant as its

attorneys in this bankruptcy case (the "Employment Application").

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC          1

3.      The same day, the Debtor, through Applicant, timely filed its Answer and

consented to the entry of an Order for Relief.  In its Answer, the Debtor elected to proceed under

Subchapter V of Chapter 11 of the Bankruptcy Code.

4.      On August 7, 2024, the Court entered an Order for Relief in this bankruptcy case.

5.      Since that time, the Debtor and Applicant have been under attack.

6.      On August 20, 2024, 423 Kennedy St Holdings LLC ("423 Kennedy") and

Developer RE1 LLC ("Developer RE1") (collectively "Creditors") filed an Objection to the

Employment Application.

7.      On September 4, 2024, the Office of the United States Trustee (the "UST") also

filed an Objection to the Employment Application.

8.      On September 4, 2024, the UST filed a separate Motion seeking to have W&O

disgorge the funds that had been provided as a retainer (the "Disgorgement Motion").

9.      Responses were filed to the Objections and to the Disgorgement Motion.

10.     On September 25, 2024, the Court conducted a hearing on the Employment

Application and the objections thereto.  Finding no merit to the Objections, the Court overruled

the Objections.

11.     As a result of the Court's comments on the record at the hearing, that same day,

the UST filed a Line withdrawing the Disgorgement Motion.

12.     By Order entered September 30, 2024 (the "Employment Order"), the

Employment Application was granted.

13.     As disclosed in the Disclosure of Compensation filed by W&O pursuant to

Bankruptcy Rule 2016(b), W&O is holding in the sum of $23,000.00 in its trust account as a

retainer for post-petition services., subject to application and allowance by this Court.

The Interim Fee Application

14.     In this first Interim Fee Application, Applicant seeks interim allowance of

compensation and reimbursement of expenses incurred by Applicant on behalf of the Debtor as

Debtor-in-Possession pursuant to § 331 of the Bankruptcy Code.  In this Application, Applicant

seeks an allowance of compensation and reimbursement of expenses for time spent and expenses

incurred from July 30, 2024 through February 7, 2025.  Attached to this Application as **Exhibit A**

is a detailed breakdown of services rendered in connection with services which are the subject of this

Application, reflecting time charges at the hourly rates of the respective attorneys and professional

staff of Applicant ("Statement").  The Statement reflects the date, description of services, and

identity of the professional staff member performing such services.  As disclosed in the Employment

Application, the rates charged by Applicant in this case are the rates customarily charged on both

bankruptcy and non-bankruptcy matters, without considering the size of the case and the degree of

responsibility, difficulty, complexity and results achieved for bankruptcy legal matters handled by

Applicant.

15.     The Statement reflects time expended by professional staff of Applicant totaling 78.7

hours and charges of Thirty-Seven Thousand Ninety-Nine Dollars and Fifty Cents ($37,099.50).  In

preparing the Statement, W&O has reviewed the time charges to make sure that such time charges

did not contain inefficiencies, excessive time spent in researching legal issues, and possible

duplication of effort.  Applicant does not believe the time charges contain inefficiencies, excessive

time spent in researching legal issues, or any duplication of effort. The time charges do, however,

reflect charges that are not typically incurred, such charges resulting from the attacks that the

Creditors and the UST improperly made against the Debtor's chosen attorneys. While the time spent

on those activities were necessary in order to provide the Debtor the representation that it sought,

Applicant believes it is appropriate to exercise billing discretion for a portion of the time spent on

those activities. After due consideration, Applicant has decided to voluntary reduce the amounts

reflected in the time charges by Four Thousand Five Hundred Ninety-Nine Dollars and Fifty Cents

($4,599.50). Applicant therefore seeks compensation for the First Interim Period in the reduced

amount of Thirty-Two Thousand Five Hundred Dollars ($32,500.00).

16.    Applicant also has incurred out-of-pocket expenses on behalf of the Debtor. Those

expenses in the amount of thirty-one dollars ($31.00), which were incurred on October 11, 2024, for

copying and mailing of the Amended Order Granting Motion to Extend and Subchapter V

Scheduling Order, are also set forth on **Exhibit A**. The expense consists solely of third-party

copying and mailing expenses and as a further exercise of billing discretion, Applicant is waiving

reimbursement of those expenses.

17.    No agreement exists between Applicant and any other person, other than employees

of the Applicant's law firm, for the sharing of compensation received for services rendered in

connection with this case.[1]

---

[1] While Applicant does not intend to share it fees with any other person or entity, it is worth
noting, as previously disclosed, that the retainer currently held by Applicant was originally wired
to Applicant from the trust account of The VerStandig Law Firm, LLC. As also previously
disclosed, prior to receiving the funds, undersigned counsel inquired and was advised that the
funds wired to Applicant were funds that The VerStandig Law Firm, LLC had received from the
Debtor and had been holding in trust for use in litigation that the Debtor anticipated it would
become party to.

Compensation Guidelines and Analysis

18.     Applicant submits the following standards have been complied with or are being

complied with in this Application:

A.     **Exhibit A** hereto represents a detailed statement of the services rendered, time

expended and expenses incurred in the course of providing professional services to the Debtor.

B.     The total compensation requested, as reduced from the amounts set forth in

**Exhibit A** is Thirty-Two Thousand Five Hundred Dollars ($32,500.00).

C.     Applicant believes that the services rendered were necessary in representing

the Debtor and were beneficial to its estate at the time the services were rendered.  As reflected in

**Exhibit A**, much of the time and effort has been spent in performing tasks that are typical in a case

under Subchapter V of Chapter 11.[2]  Applicant spent time working with the Debtor to prepare the

Debtor's Schedules, Statement of Financial Affairs, and other documents that are typically filed at

the outset of the case.  Applicant worked with the Debtor to provide an outline of a Plan and to take

the steps necessary to construct and prepare for the implementation of the Plan.  Applicant filed

applications to permit the Debtor to employ professionals.  Applicant attended the Initial Debtor

Interview and, after fending off the attacks of the Creditors and the UST, attended the Meeting of

Creditors.  Because of the delays caused by the attacks, the status conference required by 11 U.S.C.

§ 1188(a) was not scheduled, and Applicant was required to file a motion to extend the sixty (60)

day period in which the status conference was required to be conducted.  Applicant prepared the

---

[2] Because this case was initiated by the filing of an Involuntary Petition, much of the work
that is typically performed pre-petition (i.e. preparing Schedules, Statement of Financial Affairs,
and the like, were preformed post-petition rather than pre-petition).  Applicant did not perform
pre-petition services for the Debtor and did not receive pre-petition compensation.

report required by 11 U.S.C. § 1188( c), noting that, even with the delay in the status conference, it

was the Debtor's intention to file its Plan within ninety (90) days of the entry of the Order for Relief.

Applicant then worked with the Debtor to prepare and timely file that Plan.

In between performing the routine tasks, Applicant was busy fighting off the Objection and

the Disgorgement Motion, coordinating with the Debtor's special counsel to respond to the UST's

Motion to Dismiss, disabusing the UST of its initial assertion that the Debtor was not eligible to be

a debtor in a case under Subchapter V, a position that the UST retreated from after Applicant

provided a lengthy response as to why the Debtor was eligible, and preparing for the task of litigating

the UST's Motion to Dismiss.  But for the continuing pendency of that motion, the Debtor having

filed its Plan more than three (3) months ago, the Debtor's case likely would have already proceeded

to a hearing on confirmation of the Plan.

D.      Applicant hereby confirms that it has reviewed the time and expenses for

which compensation is sought in this Application (**Exhibit A** hereto) and believes such

compensation, especially with the voluntary reduction applied to Applicant's request, to be

reasonable based on compensation approved by Bankruptcy Courts in similar cases.

Applicant has also reviewed the time records set forth on **Exhibit A** by performing an

analysis of the major tasks performed in the course of representing the Debtor during the First

Interim Period.  A summary of the professional services performed during the First Interim Period

on a task-by-task basis is set forth on **Exhibit A**.

19.      During the First Interim Period, attorneys Jeffrey M. Orenstein and Matthew Abbott

provided all of the professional services to the Debtor.  No other W&O attorney provided services.

The billing rate, date of admission to the Bar, areas of practice and numbers of hours is as follows:

PROFILE OF ATTORNEY AND PROFESSIONALS
WHO PERFORMED SERVICES FOR THE DEBTOR

| PROFESSIONAL and ROLE | DATE OF ADMISSION | BILLING RATE | HOURS BILLED | AMOUNT BILLED |
|---|---|---|---|---|
| Jeffrey M. Orenstein – Member (General Bankruptcy and Litigation) | MD - 1985; DC – | $490.00 | 72.30 | $35,427.00 |
| Matthew E. Abbott – Associate (General Bankruptcy and Litigation) | MD – 2020 | $275.00 | 5.70 | $1,567.00 |
| Jessica B. Wolff – Paralegal | | $150.00 | .70 | $105.00 |
| Total | | | 78.70 | $37,099.50 |
| Total blended hourly rate of attorneys | | $471.40 | | |

Lodestar Analysis

Under the lodestar analysis of twelve (12) factors enumerated in Johnson v. Georgia

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and adopted by this Circuit in In re AOV

Industries, Inc., 797 F.2d 1004 (D.C. Cir. 1986), Applicant submits the following analysis:

A.      Time and Labor Expended.  The detailed statement of services of Applicant is

attached as **Exhibit A.**  Applicant has reviewed the Statement for duplicate or unnecessary

entries, has determined that charges have not been assessed for time that is duplicate, and that all

time billed was for services that were necessary under the circumstances of the case.  To the

extent that the Court or other parties in interest believe that there were duplicate or unnecessary

entries, Applicant asserts that the value of those entries would be substantially less than the Four

Thousand Five Hundred Ninety-Nine Dollars and Fifty Cents ($4,599.50) that Applicant has cut

in its own exercise of billing discretion.  The time entries reflect, in Applicant's judgment, the

efficiency with which Applicant handled the representation of the Debtors during the First

Interim Period.

B.      Novelty and Difficulty of Questions Raised.  As addressed above, the issues raised

in this case to date have proven to be both novel and difficult.  Never, in undersigned counsel's

nearly forty (40) years of experience has counsel been accused of engaging in fraud or violating

the Rules of Professional Conduct.  Notwithstanding the substantial amount of time spent in

explaining the error of such an assertion, the UST continued to push its arguments and then

doubled down by filing its Disgorgement Motion.  Fortunately, the Court saw these baseless

claims for what they were and noted that there was no basis for those allegations.  In order to

vindicate himself and clear the record due to the allegations which had become a part of the

public record, Applicant considered seeking sanctions against the UST, but further exercised

discretion in refraining from pursuing that course of action as a means to attempt to "turn down

the heat."

C.      Skill Required to Properly Perform Legal Services Rendered.  Because of

the nature of the issues discussed above, in order to adequately represent the Debtor during the

course of these proceedings, an expertise in the area of bankruptcy law, and federal litigation and

procedure was required.  Applicant believes that the skill was required in order to properly

perform the legal services required by the Debtor and that Applicant possess such skills.  The

lion's share of the services were provided by Jeffrey Orenstein who, after serving as a judicial

intern to the Honorable Roger Whelan while in law school, has practiced for nearly forty (40)

years with the largest portion of that time being devoted to bankruptcy and commercial litigation.

Jeffrey Orenstein has been involved in numerous complex Chapter 11 cases, has served as a

Chapter 11 Trustee, a Chapter 11 Examiner, counsel to Official Creditors' Committees, and

regularly serves as counsel and/or special counsel to Chapter 7 trustees.  Matthew Abbott is an

8

associate attorney who performed tasks where appropriate at a lower hourly rate than the Mr.

Orenstein's rate.

D.     Counsel's Opportunity Costs in Prosecuting the Instant Case. Applicant is

always engaged in other pending proceedings and, during the time that Applicant has been

actively engaged in this case, it was necessarily precluded from spending that time on other

matters that would have resulted in payment of fees to Applicant on a monthly basis. While

always important to a small firm like Applicant, this was not an overly significant factor in this

case.

E.     Customary Fees for Like Work. The customary fees charged in these

matters are normally measured by the time expended and the results obtained. In representing

the Debtor, Applicant has billed at its usual and customary rates then in effect for all similar

bankruptcy and non-bankruptcy cases at all times that services were provided. Based upon an

informal survey of fees charged by similarly experienced attorneys in the area for similar types of

work, Applicant is confident that both its hourly rates and the total fees it charges for services

have been, and remain, below what other firms and attorneys charge or charged for similar

services during the relevant time periods covered. Suffice to say that Applicant's rates are

certainly not at the high end of the range of said fees.

F.     Counsel's Expectation at the Outset of Litigation. Applicant's

expectation at the outset of the case is that it would assist the Debtor in filing, and seeking

confirmation of a Chapter 11 Plan that itself was not complicated, but that depended upon the

results of litigation to fund the Plan. Applicant anticipated that the litigation would be handled

by special counsel. Applicant understood that the litigation that would be handled by special

counsel might be contentious, but had no reason to believe the bankruptcy case would be

contentious.  For those reasons, and perhaps naively, Applicant agreed to accept a retainer than is

less than the amount it typically requires in a Chapter 11 business case.  At the time, Applicant

had no idea that it was getting itself into the quagmire that it has become.  In terms of

compensation, at the outset of this matter, Applicant expected that it would be compensated in

accordance with its usual hourly rates by the Debtor for services provided.

        G.      Time Limitations.  Although a lot of time was spent getting the initial part

of this case moving, Applicant does not believe that time limitations in representing the Debtor

was a significant factor in this proceeding.

        H.      Amount in Controversy and Result Obtained.   Although the Debtor's

Plan has been filed, the Court's consideration of confirmation of the Plan has been delayed by the

protracted proceedings on the UST's Motion to Dismiss.  To this point, Applicant believes that it

has done everything necessary to get the Debtor in a position to have its Plan confirmed and, for

that reason, believes that it has obtained good results for the Debtor.  The fees requested are

reasonable for this case and the services performed by Applicant to address the issues in this case

were necessary and have benefitted the estate.

        I.      Experience, Representation and Ability of Counsel.  W&O's attorneys

possess the experience to provide the required bankruptcy legal services which the Debtor

required in the First Interim Period.

        J.      Undesirability of Case.  Although this case did not need to be an

undesirable case, for the reasons addressed above, this case has been an undesirable case.  In fact,

and for reasons unrelated to the Debtor, Mr. Orenstein personally considers this case to be the

most undesirable case he has ever handled.  Mr. Orenstein's reputation has been damaged by the

baseless allegations that were placed in the public record and there simply is no effective way to

cure that damage.  It is rare for Applicant to assert that a case was an undesirable in providing its

lodestar analysis, but this case is certainly an exception.

        K.      Professional Relationship with Client.  Applicant represented the Debtor

in all aspects of this proceeding during the First Interim Period.  Applicant had no relationship

with the Debtor prior to this case.

        L.      Fee Awards in Similar Cases.  The services for which compensation is

sought in this Application were provided at standard hourly rates of Applicant's professional

staff.   Based upon the time invested and the results achieved to date, and as described in more

detail herein, Applicant believes that the fees it will actually receive in this matter are

substantially lower than what other attorneys receive in cases where similar services are

provided.   Applicant submits that the fees requested herein are appropriate under the

circumstances of this case.

      WHEREFORE, Applicant prays that it be awarded interim compensation for the First

Interim Period in the amount of Thirty-Two Thousand Five Hundred Dollars ($32,500.00), that

Applicant be authorized to apply the Twenty-Three Thousand Dollar ($23,000.00) retainer to the

allowed fees, that the balance of said award be paid by the Debtor, and that Applicant have such

other and further relief as this Honorable Court may deem just and proper under the

circumstances.

                          Respectfully submitted,

                          [signature on following page]

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#428335)
Wolff, & Orenstein, LLC
15245 Shady Grove Road
North Lobby, Suite 465
Rockville, Maryland  20850
(301) 250-7232
jorenstein@wolawgroup.com

Attorneys for JPK NewCo, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 11th   day of February, 2025, a copy of the foregoing
was sent via the Court's CM/ECF system to:

Kristen E Burgers, Esq. @ kburgers@hirschlerlaw.com
Kristen S. Eustis, Esq. @ Kristen.S.Eustis@usdoj.gov
Maurice Belmont VerStandig, Esq. @ mac@mbvesq.com
James D. Sadowski, Esq. @ jds@gdllaw.com
Hugh M. Bernstein, Esq. @ hugh.m.bernstein@usdoj.gov
Stephen A. Metz, Esq. @ smetz@offitkurman.com  and MD71@ecfcbis.com

\s\ Jeffrey M. Orenstein
Jeffrey M. Orenstein